276 So.2d 1 (1973)
R.G. INDUSTRIES, INC., Appellant,
v.
Reubin ASKEW, As Governor of the State of Florida, et al., Appellees.
FIREARMS IMPORT AND EXPORT CORPORATION, a Florida Corporation, Appellant,
v.
Reubin ASKEW, As Governor of the State of Florida, et al., Appellees.
Nos. 43030, 43035.
Supreme Court of Florida.
March 7, 1973.
Rehearing Denied April 25, 1973.
Richard L. Lapidus, of Lapidus & Hollander, Miami, for R.G. Industries, Inc.
Michael J. Cappucio, of Fowler, White, Humkey, Burnett, Hurley & Banick, P.A., *2 Miami, for Firearms Import and Export Corp.
Robert L. Shevin, Atty. Gen., and Scott R. Nabors, Asst. Atty. Gen., for appellees.
ADKINS, Justice.
These cases come to us on direct appeal from a judgment of the Circuit Court for Dade County which passed upon the validity of a State statute. We have jurisdiction pursuant to Fla. Const., art. V, § 3(b)(1), F.S.A.
The Circuit Court upheld the validity of Fla. Stat. § 790.26, F.S.A., which provides:
"Assembly of handguns. 
"(1) It is unlawful for any person in this state to assemble any pistol, revolver, or other handgun from parts manufactured or originating from outside the United States. This provision shall not apply to the importation of parts intended and used solely for the repair of such weapons.
"(2) Any person who violates the provision of this act is guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083. The assembly of each weapon in violation of this act shall constitute a separate and distinct offense."
Petitioners, manufacturers in Florida of firearms utilizing foreign parts, challenge the statute on several grounds, including a contention that the regulation of foreign commerce is a power reserved to Congress. The Commerce Clause of the Constitution of the United States grants to Congress the power:
"To regulate commerce with foreign nations, and among the several States and with the Indian tribes." U.S.Const., art. I, § 8, U.S.C.A.
In the area of gun control through importation controls, Congress has spoken through 18 U.S.C.A. §§ 921-928, which forbids the importation of foreign guns which are not "generally recognized as particularly suitable for or readily adaptable to sporting purposes." 18 U.S.C.A. § 925(d)(3). The State, pursuant to Fla. Stat. § 790.26, F.S.A., seeks to go further, to forbid the assembly of guns within the State utilizing foreign parts. Such action on the part of the State effectively forbids the importation of foreign gun parts into Florida and discriminates against the use of foreign gun parts within the State, a direct restraint upon foreign commerce. This power to exclude foreign products is granted to Congress and remains in Congress until the products have ceased to be the subject of discriminatory legislation. Welton v. State of Missouri, 91 U.S. 275, 23 L.Ed. 347 (1875). It is not available to the several states except in certain circumstances.
A general exception to the exclusive power of Congress in the regulation of foreign and interstate commerce is a proper application of the State's police power if the area has not been preempted by Congress. Huron Cement Co. v. Detroit, 362 U.S. 400, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). In the area of importation controls of gun traffic, Congress has specifically chosen not to preempt the area. 18 U.S.C.A. § 927. However, the exception to Congressional control of commerce granted by Huron Cement Co. v. Detroit, supra, is limited to situations where the exercise of state police power is not arbitrarily discriminatory toward foreign commerce.
The State urges that Fla. Stat. § 790.26, F.S.A., is a valid exercise of the police power in that it proposes to protect the public safety by cutting off one source of the cheap, dangerous, easily-concealed handguns known as "Saturday Night Specials." The State proved that such guns are involved in a high number of crimes, being more readily accessible to a criminal than a more expensive and more dependable handgun. Thus, the banning of such guns would be a highly laudatory goal, one which would represent a legitimate public *3 purpose for the statute, if it could be shown that such weapons would become less available in Florida.
However, there was no evidence that Fla. Stat. § 790.26, F.S.A., would have such a result. While there was testimony that identified certain of petitioners' products as "Saturday Night Specials," it was acknowledged that other cheap, dangerous, and easily-concealed handguns are readily available within the State, both from foreign parts assembled in other states and from totally domestic parts. There was no evidence that the cheap guns made by petitioners were any more dangerous than their counterparts, foreign or domestic. In fact, the evidence was that petitioners' guns were superior to several other brands marketed widely in Florida. Nor was there any evidence that a gun part manufactured in Europe was of any lesser quality than a comparably-priced domestic part. In fact, there was some testimony to the contrary due to required testing procedures in certain European countries.
The end result of the statute would not be to ban the sale or possession of "Saturday Night Specials" in Florida, nor even to materially affect the price or availability of such guns. One expert witness for the State admitted that he could not say that the statute would disarm one criminal.
What then would be the result of Fla. Stat. § 790.26, F.S.A., if it were to be enforced? A great financial burden would be placed on petitioners, and Florida criminals might be more inclined to "Buy American," but there was no evidence presented that indicated that the average Floridian would be safer from attack or injury. Thus, a legitimate public purpose is difficult to discern.
A second difficulty is that the statute does not attempt to distinguish between the assembly of "Saturday Night Specials" and the possible assembly of high-quality sporting weapons. Thus, a foreign-made rifle or shotgun which could be imported directly into Florida could not be imported in pieces to be assembled here. However, it is not necessary to consider the failing of the statute since the entire effect of the statute is to usurp the power of Congress to regulate foreign commerce with no demonstrable public purpose or benefit.
The State urges that Congress has left a loophole in 18 U.S.C.A. §§ 921-928, which the State has sought to close. That is the duty of Congress, not the duty of the legislatures of the several states.
We hold, therefore, that Fla. Stat. § 790.26, F.S.A., is unconstitutional as an unjustifiable invasion of the power to regulate foreign commerce which has been delegated to Congress by the Constitution of the United States.
Accordingly, the judgment of the Circuit Court is reversed.
It is so ordered.
CARLTON, C.J., and ERVIN and McCAIN, JJ., concur.
ROBERTS, BOYD and DEKLE, JJ., dissent.