Harry B. Frank, J.
The primary issue presented on these motions is ¡the question of the constitutionality and validity of Local Law No. 9 of 1973, which amended the New York City Administrative Code to extend the Police Commissioner’s licensing authority to wholesale manufacturers and assemblers of firearms.
Plaintiffs are a corporation and copartnership, under the same ownership, engaged in the businesses of manufacturing hand guns ¡and component parts for firearms. The underlying action, as amended, -seeks a judgment declaring either that plaintiffs’ activities, as Federally licensed manufacturers of firearms, are exempt from the provisions of the subject law or, in the alternative, declaring that the law and rules and regula *370 tions promulgated thereunder. are unconstitutional, unlawful, void and unenforceable as against plaintiffs, and additionally seeks to permanently enjoin the City of New York and its Police Commissioner, the only defendants served, from in any manner enforcing or attempting to enforce such ordinance and regulations against plaintiffs.
Presently before the court is a motion by plaintiffs for a temporary injunction to restrain defendants from in any way interfering with plaintiffs ’ operations or property in the course of defendants’ enforcement of the new law. Defendants have cross-moved for a dismissal of the complaint, and for a judgment declaring that Local Law No. 9 and the rules and regulations promulgated pursuant .thereto are in all respects constitutional and valid.
The challenged ordinance was introduced in September, 1972, and after extensive sthdy by the City Council’s Committee on Public Safety and a public hearing, was adopted unanimously by the Council on February 15, 1973, and was thereafter approved by the Mayor on March 6,1973.
The “ purpose and declaration of public policy” of the law are set forth in .section 1 thereof as follows: “a. The council finds that the increase in violent crime within the city has been matched by an increase in the production of firearms, especially cheap hand guns commonly called 1 Saturday night specials ’. It is the sense of the council that the. wholesale manufacturing or wholesale assembling of firearms within the city is an industry which should be licensed and supervised by the police commissioner.”
To fulfill such purpose, the law provides for the adjustment of the previously existing provisions of the Administrative Code relating to the licensing of gunsmiths to extend coverage of such provisions to wholesale manufacturers and assemblers of firearms, in addition to those already obliged to obtain licenses from the Police Commissioner by virtue of sections 436-6.0 and 436-6.1 of the Administrative Code.
Thus, the prior definition of “ gunsmith ” in subdivision 4 of section 436-6.0 of the code, which had expressly provided that: ‘ ‘ Gunsmith shall not include a wholesale dealer ’ ’ was amended by section 2 of Local Law No. 9 to delete such exemption and thereby make those engaged in wholesale activities subject to the same licensing requirements as others falling within the “gunsmith” category. As thus amended, the word “gunsmith ’ ’ is .now defined as: “ Any person, firm, partnership, corporation, or company who engages in the business of repair *371 ing, altering, assembling, manufacturing, cleaning, polishing, engraving or trueing or who in the course of such business performs any mechanical operation on any rifle, shotgun, firearm or machine gun. ’ ’
Similarly, section 3 of the new law provided for the repeal of former section 436-6.1 of the code, which simply covered “ Licensing of gunsmiths and dealers in firearms ”, and re-enacted said section to include “ Licensing of gunsmiths, of wholesale manufacturers of firearms, of assemblers of firearms, or dealers in firearms ”. The new section, as did the old, provides that it shall be unlawful to engage in the covered activities unless a license issued by the Police Commissioner has been obtained. While the repealed section 436-6.1, inter alia, expressly precluded the issuance of licenses to persons convicted of certain crimes, directed the keeping of records, and provided for the promulgation of .rules and regulations by the Police Commissioner, the newly re-enacted section amplifies and expands upon each of these categories and also delineates with particularity the required format for the application for a license or renewal thereof, the procedural course to be followed in investigating the statements made therein, and with respect to the promulgation of rules and regulations, provides in subdivision o as follows: “ (1) The commissioner may make and promulgate such rules and regulations regarding the issuance and renewal of such licenses and prescribe such forms as are necessary to carry out the provisions of this section.
“ (2) Such rules and regulations shall prescribe reasonable standards and conditions under which firearms and component parts of firearms thereof, shall be kept at the store or premises of gunsmiths, including store and plant security, employment, record keeping and product quality control for the protection of the public safety, health and welfare. The foregoing enumeration shall not be construed as a limitation of the commissioner’s authority to promulgate rules and regulations hereunder. ’ ’
After Local Law No. 9 became effective, the defendant Police Commissioner promulgated extensive “ Rules and Regulations Governing Gunsmiths, Dealers in Firearms, and Manufacturers and Producers of Firearms ” which took effect on May 5, 1973. The rules include various procedural steps incidental to the obtaining of the requisite licenses, provide for various safety and security measures, such as the permissible manner of displaying weapons and ammunition, and a review procedure. Insofar as the regulations apply particularly to the productions *372 and manufacture of firearms, they include a “ Factoring Criteria for Weapons”, which delineates specific standards for the design characteristics of the component parts of the weapon, and provides that no license will he issued to a manufacturer or producer of any revolver model firearm unless a qualifying score of at least 45 points is achieved.
It is this “ Factoring Criteria ” which is at the heart of plaintiffs’ opposition to the law. Plaintiffs, who possess Federal licenses for the manufacture of hand guns, ¡assert that they are the only licensed manufacturers of such guns within the City of New York, and that 95% of the guns made by them are exported from the city for resale and distribution in interstate commerce. In May, 1973, after the promulgation of the various rules and ¡regulations by the Police Commissioner, plaintiffs were advised that they were required to obtain licenses pursuant to such regulations and were requested to submit models of the firearms manufactured by them. Concluding that their guns, as presently manufactured, would not be able to meet the requisite 45-point minimum qualifying score on the “ Factoring Criteria ”, plaintiffs refused to comply with such request. They allege that in order for their guns to meet such standards extensive retooling, requiring from 8 to 12 months, would be necessary with resultant unemployment to their employees, and such hardship to plaintiffs as would in effect destroy their businesses. Plaintiffs further allege that they were told by a representative of the Police Department that in the event they were denied licenses, the department could and would confiscate and impound all materials and component parts used by plaintiffs in the manufacture of their firearms, as well as all finished products. Plaintiffs contend that this put them in imminent danger of the confiscation of their property, whereupon they instituted this action and moved for preliminary injunctive relief, which is the subject of this disposition, and which they assert is essential to prevent immediate and irreparable injury to them.
To ¡succeed on this application for temporary injunctive relief, plaintiffs have the burden of establishing a clear and undisputed right thereto (see Town of Southeast v. Gonnella, 26 A D 2d 550), which includes proof of the likelihood of ultimate success on the merits (Albini v. Solork, Assoc., 37 A D 2d 835). That means that in this instance plaintiffs must clearly establish that the subject ordinance is invalid.
Plaintiffs argue that Local Law No. 9 and the rules and regulations promulgated by the Police Commissioner in furtherance *373 thereof are void and invalid on various constitutional grounds, and further that the regulations are invalid because they were not issued in compliance with the procedural mandates of subdivision b of section 1105 of the New York City Charter.
The latter contention is wholly without merit. Contrary to plaintiffs’ assertions, the requirements of section 1105 were complied with in every respect. The proposed rules and regulations were published -in the City Record on April 12 iand again on April 26, each publication advising that comments by interested parties could be submitted on or before May 3. A further publication was made in the City Record on May 5,1973, advising that such rules and regulations had been filed with the City Clerk on May 4 and would take effect immediately upon the May 5 publication. This fully met all the requirements of section 1105. Moreover, plaintiffs are particularly-without cause for complaint in this case with regard to the procedural course of the rules, since they were in receipt of a letter from the Police Department, dated April 2, 1973, specifically advising their principal officer that: “ The proposed regulations have been delivered to the printer, and in the very near future will be published in the City Record. The first publication will specify the date within which you may -submit your comments in writing”. Despite such advance notice, plaintiffs failed to avail themselves of the opportunity to submit comments prior to the proposed effective date. Their neglectful failure in this regard cannot -serve to impugn the procedural validity of such regulations.
We turn now to the various constitutional issues raised. While somewhat imprecisely delineated, plaintiffs’ principal contentions appear to be that ,the proposed licensing standards are an unlawful attempt to regulate the manufacture of lawful goods constituting an unreasonable burden on interstate commerce, intertwined with intimations of1 Federal pre-emption in this field, that the licensing scheme -herein will deprive the plaintiffs of their liberty and property without due process of law, and that the authority given to the Police Commissioner to promulgate rules and regulations was an impermissible delegation of the Council’s lawmaking power.
It must be noted at the outset that the ordinance under attack must be approached in light of the strong presumption of constitutionality which every legislative enactment carries, including a rebuttable presumption of the existence of necessary factual support for its provisions (see Borden’s Co. v. Baldwin, 293 U. S. 194, 209-210; Defiance Milk Prods. Co. v. Du Mound, *374 309 N. Y. 537) and that only as ia last resort will courts strike down legislative enactments on the ground of unconstitutionality (I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 NY 2d 263).
In support of the argument that the licensing standards under Local Law No. 9 constitute an unreasonable burden upon interstate commerce, plaintiffs rely heavily upon the recent case of R. G. Ind. v. Askew (276 So. 2d 1) in which the Supreme Court of Florida divided 4:3 in holding .unconstitutional a Florida statute relating to the assembling of pistols, revolvers and other hand guns. There is, however, little analogy between the statute there involved and the ordinance here in issue, beyond the fact that both include reference to the assembling of hand guns. The ambit of the Florida statute was limited to making unlawful the assembling of “ any pistol, revolver, or other handgun from parts manufactured or originating from outside the United States ”. (Fla. Stat., •§ 790.26.) As was pointed out by the Florida Supreme Court (p. 2), -such express prohibition on the use of foreign parts “ effectively forbids the importation of foreign gun parts into Florida and discriminates against the use of foreign gun parts * * * a direct restraint upon foreign commerce ”. (Italics added.) Significantly, even the majority opinion concedes (p. 2) that an “ exception to Congressional control of commerce ’ ’ exists in this iarea permitting a proper application of the .State’s police power, stressing, however, that such exception ‘ ‘ is limited to situations where the exercise of state police power is not arbitrarily discriminatory toward foreign commerce ”. (Italics added.) While finding that the banning of easily concealed hand guns (pp. 2-3) “ would be a highly laudatory goal, one which would represent a legitimate public purpose for the statute, if it could be shown that such weapons would become less available in Florida ”, the majority concluded that since the limited ban would not materially affect the availability of such guns it s.erved (p. 3) “no demonstrable public purpose or benefit” and was therefore (p. 3) “ an unjustifiable invasion of the power to regulate foreign commerce”.
In contrast to the Florida statute, the ordinance here in issue imposes no direct restraint on commerce, foreign or interstate. It prohibits neither importing nor exporting of either fully assembled items or component parts. Its' provisions are solely concerned with standards which must be met by all 11 gunsmiths ” who wish to lawfully pursue their maufaeturing or assembling operations within the geographic limits of this *375 city. The regulation and licensing of firearms is a proper subject for exercise of the city’s police power (see Grimm v. City of New York, 56 Misc 2d 525), and, as noted in R. G. Ind. v. Askew (276 So. 2d 1, supra) local exercise of police power is a permissible exception to Congressional control of commerce, even where a direct restraint is imposed, provided that it does not arbitrarily discriminate against foreign commerce (citing Huron Cement Co. v. Detroit, 362 U. S. 440). In this case, there is neither a showing of any direct restraint on interstate commerce, nor any showing that the legislation would in any way discriminate against those engaged in interstate commerce. On the contrary, the licensing regulations apply equally and impose the same obligations and requirements upon every dealer and manufacturer of hand guns in the city, whether his business is interstate or intrastate.
Nor is there any merit to plaintiffs’ contention that the Federal Government has pre-empted the field with respect to this type of regulation. A similar argument was raised upon a previous attempt to invalidate other licensing provisions of the instant Gun Control Law. The rejection of such argument and the upholding of the constitutionality of the provisions and intendment of such law in that case (New York Sporting Arms Assn. v. City of New York, N. Y. L. J., April 10, 1968, p. 2, col. 1, affd. 31 A D 2d 793) are equally valid in this situation, where we are in effect dealing with an extension of those underlying regulatory provisions to cover additional categories of persons. Federal regulation of firearms is covered in chapter 44 of title 18 of the United States Code. While section 923 of such chapter deals with Federal licensing of manufacturers and dealers in the business of firearms, section 927 expressly provides that: “No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same matter”. Thus, Congress has expressly manifested its intent not to pre-empt this area.
Plaintiffs ’ further contention that the law and the regulations promulgated by the Police Commissioner will deprive them of their liberty and property without due process of law must also be rejected. Even plaintiffs do not deny that a legislative enactment pursuant to the police power is presumed valid when challenged on due process grounds, notwithstanding that it may occasion an encroachment upon private property or business interests, so long as the statute or regulation has a rational basis, that is, if it is not unreasonable, arbitrary or capricious *376 (see Grosman v. Baumgartner, 17 N Y 2d 345; Oriental Blvd. Co. v. Heller, 27 N Y 2d 212; Gail Turner Nurses Agency v. State of New York, 17 Misc 2d 273). In this case, plaintiffs’ charge that the law is arbitrary and unreasonable because the weapons which they manufacture cannot meet the minimal standards required by the “ Factoring Criteria” schedule and as a consequence they are faced “with a total loss of their substantial inventory of finished guns, piece parts and materials no longer usable, contracts which they # # will be unable to fulfill, and a heavy investment in existing and required special toolings ”. But, as already noted, such individual hardships are irrelevant if the complained of regulations have a rational basis.
The 'Subject ordinance and regulations were enacted as a response to the serious problem of increased violent crime within the city and the relationship between such crime and and the increasing availability of cheap hand guns. It is a matter of common knowledge that firearms in the hands of criminals and others not lawfully entitled to them contribute to .the increase in violent crime and pose a serious threat to the .safety of our citizens. That attempts by the local legislative body to combat such problem would constitute a proper purpose for the exercise of its police power, is not seriously challenged by plaintiffs. The true controversy here is whether the means used — that is the regulation of manufacturers and dealers in firearms — has some rational relation to the end to be achieved.
Plaintiffs, of course, contend that such regulation of manufacturers, and particularly the ‘ ‘ Factoring Criteria ’ ’ requirements, lack such rational basis. They fail, however, to make any factual presentation to sustain such contention .or to rebut the presumption of the existence of the necessary factual support for the provisions of the law (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, supra). Aside from plaintiffs’ failure to overcome such presumption, the papers hereon affirmatively establish a rational basis between the various regulations and the goal to be achieved. Those provisions which proscribe the issuance of licenses to persons convicted of specified crimes, that prohibit the employment of persons with criminal backgrounds, that regulate the manner in which firearms shall be stored and displayed, and which mandate the keeping of detailed records, all tend to prevent thefts, either by burglary or internal pilferage, and clearly are reasonably designed to restrict the availability of such firearms to those likely to engage in violent crimes. The “Factoring Criteria” perform a somewhat difi *377 ferent, but complementary role in seeking to combat the problem. While the law in the first instance seeks to keep hand guns and other firearms out of the hands of those likely to engage in violent crimes, it also recognizes that once such guns do reach criminal hands tragic consequences can erupt because of misfiring and other mishaps by reason of the lack of safety features and other deficiencies associated with cheaper model firearms. The minimum standards of quality and safety required by the ‘ ‘ Factoring Criteria ’ ’ would tend to inhibit such untoward incidents and in that way contribute to alleviating the over-all problem. That this may not be the most effective or efficient means of reaching the desired goal is not material on the issue of the constitutionality .of the regulations. As was stated in Oriental Blvd. Co. v. Heller (27 N Y 2d 212, 219, supra): “Efforts at solution of serious problems will not wait on perfect knowledge or the application of optimal methods of alleviation to the exclusion of trial and error experimentation. * * * So long as there is a reasonable basis in available information, and rationality in chosen courses of conduct to alleviate an accepted evil, there is no constitutional infirmity".
The remaining argument raised by plaintiffs is that the City Council unlawfully delegated its lawmaking power to the Police Commissioner. Plaintiffs contend that Local Law No. 9 merely declares a policy to bring all firearms manufacturers and assemblers under Police Department regulation, but fails to set any standards, limits, or guidelines for the exercise by the Police Commissioner of the broad rule-making power delegated to him. The ordinance, on its face, belies .such assertion. Contrary to plaintiffs’ bald and unsupported allegations, the law sets forth a comprehensive, detailed program which clearly delineated guidelines for the areas within which the Police Commissioner is to exercise his discretion. With respect to the “ Factoring Criteria ”, the ordinance specifically authorizes and directs the promulgation of rules governing ‘ ‘ product quality control for the protection of the public safety, health and welfare ”, To fall within the ambit of constitutionality, the legislative body need only set down “ an intelligible principle ” and standards as detailed “as is reasonably practicable in the light of the complexities of the particular area to be regulated”. (See Grimm v. City of New York, 56 Misc 2d 525, supra; Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164; Martin v. State Liq. Auth., 43 Misc 2d 682.) The standards *378 and guidelines set down by Local Law No. 9 more than fulfill such requirements.
Plaintiffs have not only failed to establish any right to preliminary injunctive relief, but. they have also failed to, in any way, impugn the validity of Local Law No. 9 and the various rules and regulations promulgated pursuant thereto by the Police Commissioner. On the contrary, a finding is warranted herein that the law and regulations are wholly valid and constitutional.
Accordingly, plaintiffs’ motion is in all respects denied, and the cross motion is granted to the extent of directing judgment in favor of defendants declaring that Local Law No. 9 and the rules arid regulations promulgated pursuant thereto are in all respects constitutional and valid.