QUESTION: Does the "Taser" weapon constitute a "firearm" for the purposes of s. 790.001(6), F. S.?
SUMMARY: The Taser TF-1, is a firearm within the meaning of s.790.001(6), F. S. (The use thereof, under certain conditions, would invoke Florida's 3-year mandatory penalty.) Section790.001(6), F. S., provides the definition: "Firearm" means any weapon (including a starter gun) which will, or is designed to, or may readily be converted to, expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term "firearm" shall not include an antique firearm. According to the manufacturer's information booklet, the Taser TF- 1 is a device described as a hand-held, flashlight-configured, plastic body which contains an electrical supply unit and into which an expendable plastic cassette is inserted. The cassette contains two barb-like projectiles which are connected to the body by insulated wires. The projectiles are launched by the expelling energy created by 4/5!mfe!x of a grain of smokeless powder. When triggered, the barbs are deployed up to a distance of 15 feet and are intended to snag on the clothing of a would-be attacker. Once launched and making contact, the device may cause up to 50,000 volts of electrical charge to pass through the body of the assailant, thereby rendering him helpless. I am informed that the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms was requested to classify the Taser under the provision of the federal Gun Control Act of 1968. Pertinent language from that legislation in terms strikingly similar to those found in s. 790.001(6), F. S., reads as follows: The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm. [Section 921(a)(3), Title I of Public Law 90-618 (1968).] By letter dated October 12, 1973, that agency, in concluding that the device was not a firearm within the meaning of the above-quoted statute, stated: Although the "Taser" wires are expelled by the explosion or expansion of gases generated by the ignition of 4/5!mfe!x of a grain of smokeless powder, the wires and appropriate wire contacts do not meet the definition of a projectile. This determination is based on the fact that the muzzle velocity is well below the standards established by the Office of the Surgeon General, Department of the Army. I am also informed that the Taser was the subject of an opinion of the Honorable Evelle J. Younger, Attorney General of California. In said opinion Attorney General Younger held that the Taser was a firearm under California law, specifically s. 12001, California Penal Code, which reads as follows: "Pistol," "revolver," and "firearm capable of being concealed upon the person" as used in this chapter shall apply to and include any device, designed to be used as a weapon, from which is expelled a projectile by the force of any explosion, or other form of combustion, and which has a barrel less than 12 inches in length. "Pistol," "revolver," and "firearm capable of being concealed upon the person" as used in Sections 12021, 12072 and 12073 include the frame or receiver of any such weapon. Notably absent in both California's and Florida's law is any requirement in the definition of "projectile" which includes a minimum muzzle velocity — the exclusive basis for the decision of the Bureau of Alcohol, Tobacco and Firearms. Although the Attorney General of California acknowledged the existence of the federal opinion, he nonetheless based his conclusion on the fact that it was not the intent of Congress to exclude the operation of state law on the same subject. As he noted: Title 18, section 927 of the United States Code declares that it is not Congress' intent to occupy the entire field of firearms control. Section 927 reads as follows: No provision of this chapter shall be construed as indicating an intent on the part of Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together. If the Gun Control Act of 1968 is found not to regulate the Taser TF-1, it is axiomatic that there would be no conflict with California law that controls the possession and use of such a firearm. See C.D.M. Products, Inc. v. City of New York, 350 N.Y.S.2d 500 (1973). [California Attorney General Opinion CR 75/22, October 30, 1975.] Having the benefit of both of the above opinions, I refer once again to applicable Florida law which contains no specific definition of what constitutes a "projectile" in terms of muzzle velocity. Absent this definition and lacking the state equivalent of standards set forth by the United States Army, I conclude that a projectile is any "body projected by external force and continuing in motion by its own inertia." Webster's New Collegiate Dictionary, 920 (1st ed. 1973). Since the projectiles are expelled by the action of an explosive charge, I am of the opinion that the Taser TF-1 is a firearm within the meaning of existing Florida law. Additionally, I do not consider Florida law in conflict with the Gun Control Act of 1968 under Title 18, s. 927, U.S.C. As Attorney General Younger observed, since the Taser is not a firearm under the Gun Control Act of 1968, then it logically follows that the same subject matter, i.e., firearms, is not the basis of conflicting state and federal laws.