OPINION OF THE COURT
Richard F. Braun, J.
This action addresses whether defendant the Council of the City of the New York (Council) has overstepped its powers and in doing so infringed upon those of plaintiffs the Mayor of the City of New York (Mayor) and the District Attorney of the County of New York (District Attorney) in enacting Local Laws, 1997, No. 91 of the City of New York (Local Law No. 91) which created the Independent Police Investigation and Audit Board (Board). (NY City Charter § 450 et seq.) Plaintiffs sued defendant in this action requesting declaratory and injunctive relief based on the New York Constitution, laws of New York State, and New York City Charter, in order to have Local Law No. 91 declared invalid and to have its operation and implementation permanently enjoined.
*332 Defendant moves for an order dismissing the complaint; granting summary judgment in favor of defendant; declaring Local Law No. 91 valid, lawful, and in force and effect; and directing plaintiff Mayor to abide by the law’s terms and implement it. Plaintiffs cross-move for summary judgment seeking a declaratory judgment that Local Law No. 91 is invalid, and without force and effect, and that plaintiffs and City agencies are under no obligation to abide by its terms; a permanent injunction enjoining the operation and implementation of Local Law No. 91; and dismissal of defendant’s counterclaim and motion.
First, defendant asserts no counterclaim, and plaintiffs show no reason why defendant’s motion should be dismissed, as opposed to their alternative argument that it should be denied and the cross motion granted. Thus, those branches of plaintiffs’ cross motion must be denied. Second, it is undisputed that there are no issues of fact on the motion and cross motion. Therefore, summary judgment is appropriate.
On July 24, 1992, the Commission to Investigate Allegations of Police Corruption and the Anticorruption Procedures of the Police Department (Mollen Commission) was established by Executive Order of former Mayor David Dinkins. The Mollen Commission conducted extensive investigations of the New York City Police Department (NYPD) and held public hearings. On July 7,1994, a comprehensive final Commission report was issued. In it, the Mollen Commission found that the most significant corruption in the NYPD related to the drug trade and that corruption had become more serious than in the past. The Mollen Commission determined that the NYPD’s corruption controls had virtually collapsed and that the NYPD had mostly abandoned its responsibility to police itself.
The Mollen Commission made numerous recommendations. Included among them was the establishment of a permanent Police Commission which would be independent of the NYPD. The Mollen Commission recommended that the Police Commission would perform continuing assessments and audits of the NYPD’s anticorruption systems, assist the NYPD with anticor-ruption programs and policies, assure that the NYPD’s command accountability system would be successful, conduct its own corruption investigations, and give to plaintiff Mayor and the Police Commissioner of the NYPD periodic reports of the Police Commission’s findings and recommendations. The Mol-len Commission stated that the Police Commission must have its own capacity to investigate the state of police corruption, including the Police Commission’s having subpoena power.
*333 In 1995, in order to implement the recommendations of the Mollen Commission, defendant Council enacted Local Laws, 1995, No. 13 of the City of New York (Local Law No. 13). That law created an earlier version of the Board. Under that law, two members of the Board were to be appointed by plaintiff Mayor, two by defendant Council, and one by plaintiff Mayor and defendant Council jointly.
Plaintiff Mayor sued defendant Council to have Local Law No. 13 invalidated and moved for summary judgment. That law was declared to be invalid (Mayor of City of N. Y. v Council of City of N. Y., 235 AD2d 230 [1st Dept], lv denied 89 NY2d 815 [1997]). The basis for the holding was that, under that law, defendant would have limited or impaired the power of plaintiff Mayor under New York City Charter § 6 (a) to appoint all nonelected officers of City government, which the members of the Board under that law would have been, and executive power of plaintiff Mayor would have been improperly transferred, in contravention of Municipal Home Rule Law § 23 (2) (f).
On February 27, 1995, plaintiff Mayor issued an Executive Order in which he established a Police Commission to combat police corruption. The Police Commission is made up of five members, all appointed by plaintiff Mayor. The duties of the Police Commission are to monitor conditions and attitudes within the NYPD which may tolerate or perpetuate corruption, and check on the performance of the anticorruption systems of the NYPD. The Police Commission may accept complaints or information from the public regarding specific allegations of police corruption. Under the Executive Order, specific allegations of corruption against individual NYPD personnel shall continue to be investigated by the NYPD, and those allegations may not be investigated by the Police Commission unless the Police Commissioner and the Commissioner of the New York City Department of Investigation (DOI), with plaintiff Mayor’s approval, determine that there are exceptional circumstances that require the investigation of the allegations in order to assess NYPD’s anticorruption systems. The Police Commission is to make reports to the Police Commissioner of NYPD and plaintiff Mayor. Any use of subpoena power would be by the DOI where the Police Commission and DOI jointly determine that issuance of a subpoena is appropriate.
The Police Commission established by plaintiff Mayor was unacceptable to defendant Council because it believed that the Police Commission was not independent of plaintiff Mayor. The *334 specific objections by defendant Council were that the Police Commission is not a sufficiently independent body because it can only investigate specific allegations of corruption against members of the NYPD where the DOI Commissioner, who is a mayoral appointee, and plaintiff Mayor determine that the above-stated exceptional circumstances exist, and because the Police Commission cannot issue subpoenas on its own but can only have the DOI do so if DOI agrees.
In an attempt to remedy the infirmities in Local Law No. 13, as held by the trial court and the Appellate Division, defendant Council passed Local Law No. 91 in 1997. Plaintiff Mayor vetoed the law, but defendant Council overrode the veto. That law explicitly states that plaintiff Mayor appoints all five members of the Board. Two of them are to be selected and appointed by plaintiff Mayor, two are to be designated by defendant Council but appointed by plaintiff Mayor, and the chairperson is to be appointed by plaintiff Mayor after consulting with the Speaker of defendant Council.
Under Local Law No. 91, the Board has the power to perform assessments and audits of the NYPD’s anticorruption systems; make recommendations to the NYPD as to improvement of those systems regarding the formulation and implementation of anticorruption policies and programs; undertake independent investigations of possible corruption within the NYPD, and in addition any investigations of possible corruption that plaintiff Mayor or the Police Commissioner of the NYPD requests be undertaken; and issue subpoenas. If the Board in the course of an assessment, audit, or investigation reasonably believes that “criminal activity or other wrongdoing” has taken place or is occurring, then the Board must report the facts which support that belief to the Police Commissioner of the NYPD and the appropriate prosecutor (NY City Charter § 451 [b]; § 452). Section 456 of the New York City Charter provides that Local Law No. 91 shall not be construed to limit the authority of the NYPD Police Commissioner to investigate corruption within the NYPD, or prevent or interfere with the investigation or prosecution of members of the NYPD by any Grand Jury, District Attorney, or other authorized officer or entity. The law requires that the Board establish within a specified time period protocols with the NYPD, each of the City of New York’s District Attorneys, and the Civilian Complaint Review Board.
Plaintiffs attack Local Law No. 91 on several grounds. The first argument is that Local Law No. 91 transfers the govern *335 mental functions of plaintiff Mayor to members of the Board who are not solely appointed by plaintiff Mayor, in violation of New York City Charter § 6 (a) and Municipal Home Rule Law § 23 (2) (f). Second, plaintiffs assert that Local Law No. 91 infringes upon the mandate of New York City Charter § 8 (a) that plaintiff Mayor and plaintiff Mayor’s appointees, including the Police Commissioner of the NYPD, insure the effectiveness and integrity of City government operations. The third contention is that the law curtails and infringes upon the investigative and prosecutorial functions of plaintiff District Attorney, in contravention of NY Constitution, article XIII, § 13; County Law §§ 400 and 927; and CPL articles 190 and 610. Fourth, plaintiffs maintain that the law is an unlawful transfer of defendant Council’s own investigative and oversight powers under section 29 of the New York City Charter.
Defendant contends that the plain wording of Local Law No. 91 vests the appointment power in plaintiff Mayor of all of the members of the Board. Defendant further asserts that Local Law No. 91 does not curtail the powers of plaintiff Mayor or any of plaintiff Mayor’s appointees, including the Police Commissioner of the NYPD. Defendant counters plaintiffs’ contention that Local Law No. 91 infringes upon the investigative and prosecutorial functions of plaintiff District Attorney by arguing that the law in no way does so, and that the Board clearly has no prosecutorial powers. Finally, defendant argues that it may provide independent investigative power to an independent board without impermissibly delegating any of defendant’s own investigative powers.
Local governments have the power to enact and amend local laws which are not inconsistent with the New York Constitution or any general law (NY Const, art IX, § 2, cl [c]; Municipal Home Rule Law § 10 [1]). This power for the City of New York is vested in its Legislature, defendant Council (NY City Charter § 28 [a]).
The home rule provision of NY Constitution, article IX, § 2, cl (c) gives local governments broad police powers relating to the welfare of their citizens (New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987], affd 487 US 1 [1988]). Duly enacted local laws have the same presumption of constitutionality as do State laws, and the party challenging a local law has a “heavy burden” to prove that the law is inconsistent with the New York State Constitution or any general law. of New York State (41 Kew Gardens Rd. Assocs. v Tyburski, 70 NY2d 325, 333 [1987]). The presumption of constitution *336 ality must be rebutted beyond a reasonable doubt, and a court only should declare a law unconstitutional as a last resort (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11 [1976]). There must be a showing that a Legislature has clearly usurped a prohibited power, in order to declare a statute unconstitutional (see, Matter of Ricker v Village of Hempstead, 290 NY 1, 5 [1943]). Generally, it is for the legislative branch of government, not the courts, “to determine ‘the reasonableness, wisdom and propriety’ of the regulations needed to protect the community (South Carolina Highway Dept. v. Barnwell Bros., 303 U. S. 177, 191)” (Town of Hempstead v Goldblatt, 9 NY2d 101, 105 [1961], affd 369 US 590 [1962]). Plaintiffs have not met their burden.
Municipal Home Rule Law § 23 (2) (f) and New York City Charter § 38 (5) provide that a local law must be submitted to the voters at a general election where the law “tranfers or curtails any power of an elective officer.” The Mayor, an elective officer, is given the power to “appoint the heads of administrations, departments, all commissioners and all other officers not elected by the people, expect as otherwise provided by law.” (NY City Charter § 6 [a].)
Plaintiffs are correct that the authority of plaintiff Mayor to appoint members of the Board is a power within the meaning of Municipal Home Rule Law § 23 (2) (f) and New York City Charter § 38 (5), and thus any attempt to transfer or curtail that power would have to be subjected to a referendum (see, Mayor of City of N. Y. v Council of City of N. Y., 235 AD2d 230, 230-231, supra; Matter of New York Pub. Interest Research Group v Giuliani, 228 AD2d 276 [1st Dept 1996]). However, Local Law No. 91 clearly vests in plaintiff Mayor the power to appoint all members of the Board, and thus a referendum is not required for Local Law No. 91 (cf., Morin v Foster, 45 NY2d 287, 294 [1978] [it was held that the absence of a provision for a referendum made a local law constitutionally defective where the law attempted to curtail an existing power]). The law specifically provides plaintiff Mayor with that power and otherwise only gives defendant Council the right to designate two of the members of the Board and defendant Council’s Speaker the right to have plaintiff Mayor consult with the Speaker as to the appointment of the chairperson of the Board. As to the two persons that defendant Council gets to nominate to the Board, that in no way deprives plaintiff Mayor of the ultimate right to appoint those Board members (cf., Matter of Di Brizzi [Proskauer], 303 NY 206, 213 [1951] [where it was *337 held that the Attorney General was not deprived of the power to appoint members of the New York State Crime Commission by virtue of the Governor’s Executive Order requesting him to do so]). Plaintiff Mayor never has to appoint the nominees of defendant Council but can continue rejecting them until defendant Council designates persons that plaintiff Mayor wants to appoint. Such a process was recognized long ago by the Court of Appeals (Matter of Kane v Gaynor, 202 NY 615, affg on concurring opn below 144 App Div 196, 206 [2d Dept 1911]). As to the chairperson of the Board, plaintiff Mayor has to do no more than inform the Speaker of defendant Council of the person whom plaintiff Mayor intends to appoint, listen to the Speaker’s opinion as to the appointment, and then, if desired, make the appointment no matter what the Speaker’s opinion is.
Defendant Council asserts that the appointment process for members of the Civilian Complaint Review Board (CCRB) compels a holding that Local Law No. 91’s appointment process is proper. The CCRB consists of 13 members, all of whom are appointed by plaintiff Mayor, with five designated by defendant Council and three by the Police Commissioner of the NYPD. Defendant argues that plaintiff Mayor implicitly conceded in plaintiff-respondent’s brief to the Appellate Division in Mayor v Council (supra) that the appointment structure as adopted in Local Law No. 91 would be proper by describing in the brief the appointment procedure for the CCRB as giving to plaintiff Mayor “the sole right to appoint all CCRB members [citation omitted].” Plaintiff Mayor therein contrasted the CCRB appointment process with the Local Law No. 13 process which gave defendant Council the right to appoint some members of the Board proposed thereunder. Although the doctrine of judicial estoppel does not require the holding sought by defendant because the Appellate Division, First Department, did not indicate that it based its holding in Mayor v Council (supra) on plaintiff Mayor’s position therein as to the CCRB appointment process (Kalikow 78/79 Co. v State of New York, 174 AD2d 7, 11 [1st Dept 1992]), the fact that plaintiff Mayor took that position further persuades this court in reaching its holding on the appointments issue. Furthermore, since the CCRB came into existence, plaintiff Mayor has asserted his ultimate appointment power as to CCRB members by not appointing all persons who have been designated by defendant Council but has recognized the designation right of defendant Council by appointing and reappointing some of its designees to the CCRB.
*338 Furthermore, in 1995, the Street Vendor Review Panel was created, as per legislation introduced by plaintiff Mayor, with one member of that Panel being appointed by plaintiff Mayor upon being nominated by the Speaker of defendant Council (Administrative Code of City of NY § 20-465.1). Further, plaintiff Mayor has acquiesced in the appointment process of the New York City Campaign Finance Board where, of the five members, two are appointed by plaintiff, two by defendant Council’s Speaker, and the chairperson by plaintiff Mayor after consulting with the Speaker, by making appointments thereunder (Administrative Code § 3-708 [1]).
Plaintiffs latch on to a statement as to Local Law No. 91 made during legislative debate by the chairperson of defendant Council’s Committee on Governmental Operations that defendant Council will “name two [Board members] and that there will be advise and consent,” as if that evidences legislative history of an intent by defendant Council that it would be impermissibly involved in the appointment process for Board members. That at best ambiguous statement cannot be deemed to constitute legislative history to lead this court to interpret Local Law No. 91’s appointments provision in other than its clear and unambiguous language that plaintiff Mayor makes all of the appointments to the Board (see, Bender v Jamaica Hosp., 40 NY2d 560, 561 [1976]). Generally, a statement by a legislator may only be given some weight to determine legislative intent if there is no better indication thereof, and may only be used cautiously (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577 [1998]). Resort to extrinsic matter, including legislative history, is inappropriate when the language of a law is not ambiguous and its meaning unequivocal (Sega v State of New York, 60 NY2d 183, 191 [1983]). In any event, the legislative intent is clearly stated in section 1 of Local Law No. 91 that defendant Council intended to cure the defects found by the trial court and Appellate Division in Local Law No. 13, which included the appointment process.
Thus, the process under Local Law No. 91 as to appointment of members of the Board is not violative of the New York Constitution, Municipal Home Rule Law, or New York City Charter. Summary judgment cannot be afforded to plaintiffs thereunder.
Plaintiffs next argue that the Board has been given powers that curtail or infringe upon those of plaintiff Mayor and mayoral appointees, including the Police Commissioner of the NYPD. Under New York City Charter § 3, plaintiff Mayor is *339 the City’s chief executive officer, and plaintiff Mayor “shall be responsible for the effectiveness and integrity of city government operations and shall establish and maintain such policies and procedures as are necessary and appropriate to accomplish this responsibility including the implementation of effective systems of internal control by each agency and unit under the jurisdiction of the mayor.” (NY City Charter § 8 [a].) In support of their position on the infringement issue, plaintiffs cite to New York City Charter § 389 (a) which provides: “In accordance with the policies and procedures established by the mayor for this purpose, heads of mayoral agencies shall maintain an internal control environment and system which is intended to maximize the effectiveness and integrity of agency operations and to reduce the vulnerability of the agency to fraud, waste, abuse, error, conflict of interest, and corruption.”
Plaintiffs particularly object to the subpoena powers given to the Board in support of its investigations, and argue that such powers would interfere with the executive powers of plaintiff Mayor and the functions of the NYPD. Plaintiffs acknowledge that, unlike the Board under Local Law No. 13 which was given the power to investigate and assist the NYPD, the Board under Local Law No. 91 only has the power to investigate and make recommendations. The courts have upheld the creation of investigatory bodies in the past, some with similar subpoena powers to the Board (see, e.g., Matter of Di Brizzi [Proskauer], 303 NY 206, 215 [1951] [as to the New York State Crime Commission], supra; Matter of Commission of Investigation v Lombardozzi, 7 AB2d 48, 54 [1st Dept 1958], affd 5 NY2d 1026 [1959]; Locust Club v City of Rochester, 22 NY2d 802, affg on opn below 29 AD2d 134 [4th Dept], remittitur amended 22 NY2d 894 [1968] [upholding the establishment of a Police Advisory Board, which, like the Board here, had the power to investigate and advise]; Kiernan v City of New York, 64 Misc 2d 617 [Sup Ct, NY County], affd 35 AD2d 1081 [1st Dept 1970] [regarding the Knapp Commission, which investigated allegations of police corruption]).
Neither the subpoena power nor any other power of the Board in any way unlawfully diminishes or interferes with the executive powers of plaintiff Mayor or any mayoral appointees. This argument of plaintiffs also fails.
The third main contention of plaintiffs is that Local Law No. 91 illegally infringes upon the power of plaintiff District Attorney to investigate and prosecute crimes. None of the constitutional and statutory provisions cited to by plaintiffs *340 supports this position. They all relate to the prosecutorial function of District Attorneys. The Board has no prosecutorial powers, only investigative and advisory ones (cf., Matter of Henry v New York State Commn. of Investigation, 143 AD2d 914 [2d Dept], affg on opn below 141 Misc 2d 849, 858 [Sup Ct, Suffolk County 1988] [where it was recognized that the respondent’s role was purely investigative, not prosecutorial or adjudicative]). Nor does the Board’s investigative function in any way usurp the powers of the Grand Jury (see, Matter of Di Brizzi [Proskauer], supra, 303 NY, at 217). In fact, the Board is required to make referrals of certain discovered wrongful behavior to the Police Commissioner of the NYPD and to the appropriate prosecuting attorney (NY City Charter § 451 [b]), who may then investigate further, and the latter may decide to prosecute any referred instances of criminality. To attempt to assure that the Board works cooperatively with the District Attorneys, NYPD, and CCRB, the Board must enter into a protocol with each of them (NY City Charter § 457).
Certainly, in addition to any Board investigations, plaintiff District Attorney may conduct concurrent or independent investigations, where desired. Undoubtedly, that occurs now when other bodies do investigations, such as the DOI (NY City Charter § 803; Administrative Code § 16-512), the New York City Trade Waste Commission (Administrative Code §§ 16-508, 16-510, 16-511), and the Police Commissioner of NYPD. Plaintiff District Attorney may pursue any prosecutions that he believes are appropriate (NY City Charter § 456; cf., Forti v New York State Ethics Commn., 75 NY2d 596, 616 [1990] [where the Court of Appeals stated that it was “highly troublesome” that criminal prosecutions could only occur upon referral by the defendant]). The powers and functions of plaintiff District Attorney will not be unlawfully infringed upon by the Board here.
The final argument of plaintiffs also is meritless. Local Law No. 91 is not an illegal delegation by defendant Council of any of its powers to the Board. Defendant, as the legislative body of New York City (NY City Charter § 21), may legally delegate powers to an administrative agency in the executive branch of New York City government (see, Matter of Levine v Whalen, 39 NY2d 510, 515 [1976]; C.D.M. Prods. v City of New York, 76 Misc 2d 369, 377-378 [Sup Ct, NY County 1973]). Contrary to the contention of plaintiffs, defendant Council still maintains its own powers of investigation and oversight (NY City Charter § 29 [a]), and, if defendant Council wishes, it can *341 concurrently exercise them in areas that the Board would be investigating. However, defendant Council may vest in the Board the power to do investigations, just as defendant has in the past in creating other investigatory bodies like the CCRB. Defendant Council has not delegated any law-making powers to the Board. Thus, there has been no unlawful delegation of powers here.
Defendant Council had the power to establish the Board in the fashion that defendant concluded was appropriate here, i.e., Local Law No. 91. That is because defendant was not acting unconstitutionally or unlawfully in doing so. Plaintiffs rather are attempting to violate the separation of powers doctrine by infringing upon the powers of defendant Council as the legislative body of the City of New York duly chosen by the people of the City. The people have spoken through their elected legislators in establishing the Board.
As former NYPD Police Commissioner Ray Kelly testified before the joint hearing of defendant Council’s Committee on Public Safety and Committee on Governmental Operations prior to the enactment of Local Law No. 13: “Where is the harm in more eyes watching for corruption?” The Board is lawful, and its eyes should be added to the watch. The Mollen Commission found that the vast majority of NYPD police officers are honest and hard-working public servants. It is only the minority who are dishonest that should fear the establishment of a more independent corruption oversight board. The Board is lawful; it should begin its work.
Dismissal of the complaint is not the appropriate remedy but rather a declaration in favor of defendant Council is (see, Lanza v Wagner, 11 NY2d 317, 334, cert denied 371 US 901 [1962]). Therefore, the motion should be granted to the extent of awarding summary judgment to defendant declaring that Local Laws, 1997, No. 91 of the City of New York is valid, lawful, and in full force and effect. As to the request that plaintiff Mayor be directed to abide by the terms of and implement Local Law No. 91, defendant Council has not counterclaimed for any such relief. The cross motion should be denied.