KALIKOW 78/79 COMPANY, Appellant, v STATE OF NEW YORK et al., Respondents, and CITY AND SUBURBAN HOUSING TENANTS ASSOCIATION, INC., et al., Intervenors-Respondents.

First Department, January 9, 1992

8

### APPEARANCES OF COUNSEL

*Donald N. David* of counsel *(Noah Nunberg, Erica Tukel Wax, Moshe Mirsky, Mark Maltz* and *Frederic Gelfond* with him on the brief; *Dryer & Traub,* attorneys), for appellant.

*Dennis J. Saffran* of counsel *(Robert Abrams, Attorney-General,* attorney), for State of New York, respondent.

*Elizabeth Dvorkin* of counsel *(Francis F. Caputo* and *Albert Fredericks* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for City of New York, respondent.

*David Rozenholc & Associates* for intervenors-respondents.

### OPINION OF THE COURT

Asch, J.

Plaintiff, a New York partnership, owns the City and Suburban Homes, an apartment complex in Manhattan occupying an entire block. Plaintiff's predecessor in interest purchased the land and buildings in 1984 for $43,000,000 with the intention of demolishing the entire 1,338-unit apartment com-

plex and replacing it with four high-rise luxury buildings. Thereafter, the development was scaled back. The present proposal requires the demolition of five buildings containing 401 apartments, 61 of which are rent controlled and 340 rent stabilized. At the commencement of this action, two thirds of the rent-stabilized and one fifth of the rent-controlled apartments had been vacated as a result of relocation offers.

Four of the five buildings contain rent-controlled apartments and are subject to the City Rent and Rehabilitation Law (Administrative Code of City of New York § 26-401 *et seq.*). Administrative Code § 26-408, which governs eviction of rent-controlled tenants, specifies the situations in which an eviction can be achieved without obtaining prior approval of the defendant State Division of Housing and Community Renewal (DHCR). To demolish a building and replace it with new housing, however, the landlord must comply with the requirements of Administrative Code § 26-408 (b) (4): (1) the new building must contain at least 20% more housing than the demolished buildings; (2) adequate arrangements must have been made to relocate tenants; (3) necessary demolition and construction permits must have been obtained. In 1974, the Legislature enacted the Sound Housing Act, adding paragraph (5), requiring the landlord to prove that there is no "reasonable possibility" that it can earn an 8½% net annual return on the assessed value of the property without such demolition and development. The Sound Housing Act (Administrative Code § 26-408 [b] [5]; Act) was passed to inhibit the rapid proliferation of luxury housing which was replacing thousands of units of moderate-income housing and destroying entire stable communities in the city.

To obtain approval for demolition of rent-controlled housing, a notice of intent must first be filed with the DHCR. The landlord must then file construction and demolition permit applications with the City Buildings Department. Upon completion of these preliminary steps, the landlord must file an application for a certificate of eviction. In this last step, the agency evaluates whether the requirements of the Sound Housing Act and the Administrative Code have been met. To assist in this determination, the landlord must submit detailed financial information on the building to be demolished, etc. The agency will evaluate the expenses, rents, and other economic factors to determine whether the landlord can earn an 8½% return.

Plaintiff commenced this action for a declaratory judgment

and damages. The first and second causes of action assert a violation of due process as the result of using the assessed value of the property in determining whether demolition is permitted under the Sound Housing Act. The third and fourth causes of action assert that the Sound Housing Act results in a taking of property without just compensation. The fifth and sixth causes of action assert the lack of a procedural mechanism to obtain an increase of the assessed value and thus a per se constitutional violation. Plaintiff also seeks a declaration that the Sound Housing Act is unconstitutional and total damages of $600,000,000.

The IAS court granted the defendants' motions dismissing the complaint.

■ The IAS court found that plaintiff was estopped from challenging the constitutionality of the Sound Housing Law as applied, since its claim that the assessment on its property was artificially low almost mandating a return of over 8½% was contrary to a previous petition filed by plaintiff contending the assessment on the four buildings was too high. Such a finding, however, was erroneous.

The doctrine of judicial estoppel holds that a party successfully taking a position in one proceeding may not thereafter assume an inconsistent position in a subsequent proceeding. (57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 53, at 80.) However, judicial estoppel may not be asserted as a defense unless it can be shown that the party against whom the estoppel is sought procured a judgment in its favor as a result of the inconsistent position taken in the prior proceeding. *(Ibid.)* Here, the tax proceeding had not yet been decided but was still pending. In addition, the defendants in this action are not the same as the defendants in the tax action. While some jurisdictions use the doctrine of judicial estoppel where a party has changed its position even where it had not achieved success in a prior litigation *(see, e.g., Patriot Cinemas v General Cinema Corp.,* 834 F2d 208, 211-212), the IAS court erred in this determination, since such a broad utilization of the doctrine is not the law of this State *(see,* 57 NY Jur 2d, Estoppel, Ratification, and Waiver, *op. cit.).*

In any event, plaintiff concedes that its challenge to the statute was not an as-applied challenge addressing the application of the provisions of the Sound Housing Act since it had not yet completed the statutory review process and such a challenge would be premature. No demolition or building

permits had been obtained prior to the initiation of this action, and while applications for certificates of eviction were filed with the DHCR, no financial data was included as required to allow a determination as to whether plaintiff earned an 8½% return or had complied with the other provisions of the Administrative Code.

■ Plaintiff contends that the first and second causes of action alleged with sufficient factual support that paragraph (5) of Administrative Code § 26-408 (b) (Sound Housing Act) imposes an arbitrary, capricious and unequal hardship standard on similarly situated owners of rent-controlled real property and thus violates the Equal Protection Clauses of the State and Federal Constitutions under the Fourteenth Amendment of the United States Constitution and article I, § 11 of the New York State Constitution. This claim is without merit.

Plaintiff asserts that because class two properties (residential buildings other than one-to-three-family homes) are assessed "randomly and haphazardly with no uniform ratio of assessed value to full value for any particular parcel of realty" a burden is imposed unequally on similarly situated property owners. While class two real property is supposed to be assessed at 45% of actual value and plaintiff contends most such property is assessed at a rate far below 45% of market value, plaintiff admits that its buildings are actually assessed at 47.8% of their market value. Based on plaintiff's own admission, it has been more favorably treated on the question of return on actual value than other class two property owners. It therefore has no standing to complain as the assessment alleged does not cause it any injury. *(See, Matter of Sarah K.,* 66 NY2d 223, 241.)

■ Further, this contention that the Act is arbitrarily administered because of defective assessment practices fails to state a claim against the validity of the Sound Housing Act on its face. As stated in *Snowden v Hughes* (321 US 1, 8): "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *(See also, Matter of 303 W. 42nd St. Corp. v Klein,* 46 NY2d 686, 693.)

No such showing is made herein.

"[T]he failure of state taxing officials to assess property for taxation on a uniform standard of valuation as required by

the assessment laws" is not enough without a showing of "purposeful discrimination" to establish a denial of equal protection. *(Snowden v Hughes,* 321 US, *supra,* at 9.) Even if the property is arbitrarily assessed to the extent of violating the Equal Protection Clause, the remedy is not an action challenging the constitutionality of the Sound Housing Act but one challenging the assessment process under the Real Property Tax Law. *(See, Bucho Holding Co. v Temporary State Hous. Rent Commn.,* 11 NY2d 469, 476.) The IAS court properly found therefore that the Sound Housing Act did not violate the Equal Protection Clause.

■ Further, the nisi prius court did not err in finding that the complaint failed to plead a cause of action demonstrating that the Sound Housing Act on its face violated plaintiff's State and Federal rights to due process of law. Legislation is upheld as comporting with due process if it "has any reasonable relation to the State's legitimate interests". *(Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 71 NY2d 313, 320.) In *Pennell v San Jose* (485 US 1, 12-14, n 8 [1988]), the Supreme Court upheld the facial validity of a rent-control provision which allowed for the consideration of tenant hardship in determining rents, finding the provision to be rationally related to a legitimate State interest in " 'prevent[ing] excessive and unreasonable rent increases' " resulting from scarce housing "protect[ing] consumer welfare" and "reducing the costs of dislocation" resulting from eviction. Similarly, the Sound Housing Act also satisfies a legitimate State interest in preserving affordable housing and protecting tenants. It was not irrational to use return on assessed property value as a standard for hardship relief for property owners. While plaintiff contends that it would be more rational to use the actual value rather than assessed value, courts have noted it is "acceptable" to use assessed valuation as a basis for determining the reasonableness of return in landmark cases *(Penn Cent. Transp. Co. v City of New York,* 42 NY2d 324, 331, *affd* 438 US 104, *reh denied* 439 US 883), and rent regulations allowing 6% return on assessed valuation have been deemed constitutional *(Felner v Office of Rent Control,* 27 NY2d 692).

■ Plaintiff further contends that the Sound Housing Act creates an irrebuttable presumption that the assessed value is fixed and cannot be raised and thus there is a violation of procedural due process. However, as noted by defendant City of New York, the property owner may seek an increase in assessed valuation if the owner is willing to pay higher taxes.

■ We further find that the 8½% return on assessment standard in the Sound Housing Act does not violate the Taking Clauses of the State and Federal Constitutions. The United States Supreme Court has noted the important distinction between a claim that a particular government action upon a specific property requires compensation and a claim that the mere enactment of a statute constitutes a taking. The Supreme Court has repeatedly admonished that " 'the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.' " *(Keystone Bituminous Coal Assn. v DeBenedictis,* 480 US 470, 494, quoting *Hodel v Virginia Surface Min. & Reclamation Assn.,* 452 US 264, 294-295.)

A statute is presumed to be constitutional. *(Hotel Dorset Co. v Trust for Cultural Resources,* 46 NY2d 358, 370.) Plaintiff has the burden of showing that the mere enactment of the statute causes a taking. *(Keystone Bituminous Coal Assn. v DeBenedictis, supra,* at 495.) Use regulation can effect a taking if a law does not "substantially advance legitimate state interests" or denies an owner "economically viable use" of the subject property. *(Agins v Tiburon,* 447 US 255, 260.) A violation will not result, however, merely because a landowner is deprived of the most profitable use of the property as long as some beneficial alternative use exists. *(Hodel v Virginia Surface Min. & Reclamation Assn.,* 452 US, *supra,* at 296.)

There is no showing that plaintiff here is denied use of the subject property. Moreover, rent control has been held not to be a per se taking, and the power of the States to regulate housing conditions and landlord-tenant relationships has been upheld. *(See, Pennell v San Jose, supra,* at 12, n 6.) The Sound Housing Act advances a legitimate State interest. It prevents the destruction of viable sound housing which is affording the owners reasonable returns on their investments. It also will not constitute a taking where the owner's earnings are limited by a valuation of property below actual market value as long as the return is not unreasonable. *(See, Bucho Holding Co. v Temporary State Hous. Rent Commn.,* 11 NY2d, *supra,* at 473-474.)

*Seawall Assocs. v City of New York* (74 NY2d 92) is not to the contrary. There the court struck down Local Laws, 1987, No. 9 of the City of New York as depriving an owner of economically viable use of his property. Local Law No. 9 was enacted to solve the homeless problem by requiring owners of vacant SRO units to restore them to habitable condition and

retain their use as single room occupancy housing. The Court of Appeals found this to be unconstitutional since it totally prohibited the previously permissible commercial development of the property and not only protected current tenants but mandated rehabilitation of buildings and acceptance of new tenants by building owners. *(Supra,* at 112, n 11.) However, the instant Act does not single out a small group of property owners and require them to bear a disproportionate share of an existing problem. Further, the Sound Housing Act imposes restrictions on the termination of existing tenancies while Local Law No. 9, as noted, required the acceptance of new tenancies.

Accordingly, the order of the Supreme Court, New York County (Leland DeGrasse, J.), entered April 9, 1990, which, *inter alia,* granted the motion of defendants to dismiss the complaint, should be affirmed, with costs and disbursements payable by plaintiff.

CARRO, J. P., WALLACH, KUPFERMAN and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered April 9, 1990, affirmed, with costs and disbursements payable by plaintiff.