OPINION OF THE COURT
Renee R. Roth, S.
The executor of the estate of John Rogers moves to quash two subpoenas served by judgment creditors who seek information about estate assets. Such motion raises a novel issue concerning the procedure in this court when creditors seek to enforce a judgment against a decedent’s estate.
The judgment at issue (for damages in the amount of some $114,500) was obtained in an action in Supreme Court (New York County) against decedent, two other individuals and two companies several weeks before decedent’s death (135 W. 36th LLC v World City Am., Inc., Index No. 115830). In the absence of any provision of the SCPA which addresses the procedures for enforcing such a judgment against an estate, the provisions of the CPLR control (SCPA 102).
As a rule, a subpoena in aid of enforcement of a judgment may be issued by an attorney without court approval and without commencing a separate proceeding (CPLR 5224; Munch Brewery, Inc. v Grief, 256 App Div 1075 [1939]; Sulil Realty Corp. v Rye Motors, 45 Misc 2d 458, 460 [1965]). Where, however, a judgment creditor seeks to invoke an “enforcement procedure” against the property of a decedent, CPLR 5208 requires that leave to do so first be obtained from the Surrogate’s Court. Although such section does not expressly identify the devices included within the term “enforcement procedure,” its legislative history is clear that a subpoena is among the procedures subject to the leave requirement (3d Prelim Rep of Advisory Comm on Prac and Pro, 1959 NY Legis Doc No. 17, at 126, reprinted following McKinney’s Cons Laws of NY, Book 7B, CPLR 5208).
The executor has raised a threshold challenge to the instant subpoenas by arguing that they can be given no effect since the *927 judgment creditors have not filed a petition initiating a separate proceeding for leave to serve the subpoenas. The question thus is whether the relevant statutes require commencement of a separate proceeding for such purpose.
The terms of section 5208 of the CPLR do not prescribe any specific manner in which to seek the required leave of court. Section 1812 of the Surrogate’s Court Procedure Act, governing the issuance of execution against a decedent’s property, contains an express mandate that a judgment creditor file a petition for leave of court, but such requirement applies only to execution against real property (which is not involved here). The absence of a parallel provision in the statute relating to personal property appears to be telling (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5208:l).
Furthermore, the legislative purpose underlying section 5208 does not indicate that the request for leave must be made within the context of a separate proceeding. Clearly, the purpose of such statute is to assure that competing liens and claims against an estate are given appropriate priorities (SCPA 1811) and to allow the surrogate to consider any relevant factors unique to the particular estate (Siegel, Practice Commentaries, supra). Thus, the only procedural element that is essential to such objective is notice to all parties whose interests might be affected by the proposed enforcement mechanism.
Where there are no competing creditors’ claims before the court, where the proposed enforcement procedure (here, for information only) will not imperil any interest peculiar to estates (such as a specific devise or bequest) and where the fiduciary has received notice of the subpoenas and an opportunity to present his position with respect to them, the statutory purpose is achieved without engaging the apparatus of a separate proceeding (see Siegel, Practice Commentaries, supra; cf. Sulil Realty Corp. v Rye Motors, supra). Accordingly, it is concluded that the judgment creditors were no more required to file a petition for leave to serve their subpoenas than the executor was required to file a petition to quash them.
We turn now to the executor’s contention that the doctrine of judicial estoppel bars the judgment creditors from enforcing their judgment against the estate. Such doctrine holds that a party who has benefitted from a particular position in one proceeding may not assume an inconsistent position in a subsequent proceeding. The executor maintains that the judgment creditors in effect waived their claims against the estate *928 when they elected, on a postjudgment motion in Supreme Court, to proceed against the surviving judgment debtors without first substituting the executor for decedent. Thus, the executor argues that their present effort to seek information from the estate is inconsistent with such alleged waiver.
This aspect of the executor’s defense against the subpoenas is also without merit. Judicial estoppel may not be asserted as a defense unless it can be shown that a prior inconsistent position of the party against whom the estoppel is sought was the means by which such party procured its judgment (Kalikow 78179 Co. v State of New York, 174 AD2d 7 [1992]). The executor has not alleged that the judgment creditors obtained their judgment by assuming a position inconsistent with their present one. As for the executor’s theory of waiver, moreover, it is clear from the transcript of the Supreme Court postjudgment proceeding that the judgment creditors had merely elected to proceed immediately against the available defendants while they awaited appointment of a fiduciary for decedent’s estate whom they could eventually pursue. Accordingly, the judgment creditors are not barred by the doctrine of judicial estoppel from seeking information in aid of enforcement of their judgment. The executor’s motion to quash the subpoenas is therefore denied.
Finally, we turn to the judgment creditors’ request that the court “so order” a third subpoena, directed to JPMorgan Chase, seeking the bank’s records for an account maintained by decedent and two companies in which he held an interest. The judgment creditors assert that they seek to trace the proceeds of two checks (for $150,000 and $350,000, respectively) paid to decedent, then acting as attorney for his codefendants, which he had deposited into his personal account late in 2001 and from which he shortly thereafter had made withdrawals. The subpoena duces tecum directed to JPMorgan Chase, however, seeks documents unrelated to such transactions. That subpoena has thus been modified to be narrower in its scope and, as so modified, has been signed.