(July 12, 1984)

■ DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v ROBERT JOHNSTON, Appellant. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v SUSAN KLEIN et al., Appellants. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v ROBERT CARNIERO et al., Appellants. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v ROBERT WOODALL et al., Appellants. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v SHERRY HOLLAENDER, Appellant. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v CARL JEROME et al., Appellants. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v ROSALIE ACINAPURA et al., Appellants. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v WILL HORWITT, Appellant. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v SUSAN HARMAN, Appellant. DUNDEE EQUITY CORPORATION, Respondent, and PHILLIP EDWARDS, Intervenor, v REBECCA SOLOMON et al., Appellants. — Judgments of the Supreme Court, New York County (Martin Stecher, J.), eight of which were entered April 13, 1983, and two of which were entered on April 15, 1983, granting plaintiff partial summary judgment, and order entered November 10, 1983, granting reargument and, upon such reargument, adhering to the original judgments, affirmed, without costs, and without prejudice to such proceedings as defendants may be advised to bring, either before the Loft Board or elsewhere. ¶ This is another of the seemingly never-ending controversies between the landlord of a loft building and a group of tenants to which it leased the lofts for use as residences. The leases all contained the provision that the lofts were to be used as artists' studios and for no other purposes. Notwithstanding the provision of the leases, both the landlord and the tenants knew and understood that the premises were, in fact, to be used for residential purposes and they were openly used as such. ¶ When the leases expired the landlord refused to renew them, allegedly so that the apartments could be converted to condominium or cooperative use. The tenants, on the other hand, refused to vacate. The tenants contend that thereupon the landlord initiated a campaign of harassment culminating in the reduction of services including heat, hot water and elevator services. The tenants retaliated by withholding rents. The result of this standoff was the commencement of these actions for ejectment and for the rental value of the premises in question. ¶ Prior to the commencement of these actions, the landlord applied for a certificate of occupancy for the premises as a class A multiple dwelling pursuant to the provisions of article 7-B of the Multiple Dwelling Law. Such certificate was issued on April 24, 1981. Thereafter, a proceeding was initiated before the Board of Standards and Appeals seeking revocation of the certificate of occupancy on the ground that under section 111-103 of the Zoning Resolution such certificate could be issued only for a building such as this erected on a lot of less than 5,000 square feet, in the absence of a special permit from the City Planning Commission, and that the loft building in question was erected on a

building lot of some 10,000 square feet. ¶ This action was commenced approximately one month after the certificate of occupancy was issued. Thereafter plaintiff moved for partial summary judgment seeking money judgments for the reasonable value of the use and occupation of the premises. The motions were adjourned from time to time. While the motions were pending, the Board of Standards and Appeals revoked the certificate of occupancy. Thereupon plaintiff applied for registration as an interim multiple dwelling under the Loft Law (Multiple Dwelling Law, art 7-C). By orders dated April 7, 11, and 12, 1983, plaintiff's motions for summary judgment were granted to the extent that plaintiff received a money judgment against each tenant for unpaid rent and for unpaid use and occupancy to and including February 28, 1983. The amount awarded in each case was bottomed upon the base rental. All other claims contained in the complaints, including interest, were reserved for trial. The judgments appealed from were based on these orders. ¶ Subsequently, the mortgagee of the premises brought a proceeding under CPLR article 78 to set aside the vacatur of the certificate of occupancy upon the ground that it had relied on the validity of the certificate originally granted by the Board of Standards and Appeals in taking the mortgage on the premises. It argued that as a consequence the Board was precluded by subdivision 5 of section 301 of the Multiple Dwelling Law from impairing the security for the mortgage. Special Term granted the petition and remanded the matter to the Board of Standards and Appeals for a *de novo* hearing on the ground that the mortgagee had not been notified of the revocation proceeding and, since the value of its security might be impaired substantially by the determination, it had been deprived of procedural due process. ¶ After Special Term granted the motion for partial summary judgment, the tenants, based upon the revocation of the certificate of occupancy by the Board of Standards and Appeals, moved to reargue. By the time the motion to reargue was heard, Special Term had set aside the vacatur of the certificate and remanded the matter to the Board of Standards and Appeals for a *de novo* hearing. That action was brought to the attention of the court on reargument of the motions for summary judgment. Special Term granted reargument, but, on reargument, adhered to its original determination, notwithstanding the vacatur of the certificate of occupancy. In the interim the Board of Standards and Appeals had appealed to this court from the vacatur of the certificate of occupancy. We modified Special Term to dismiss the proceeding in its entirety, thus sustaining the holding of the Board of Standards and Appeals (*Matter of Schultz Mgt. v Board of Stds. & Appeals,* 103 AD2d 687). This then is the posture of the matter now before us. ¶ Plaintiff has applied for registration as an interim multiple dwelling. At the time of the reargument Special Term noted that all that stood between plaintiff and registration of the loft building as an interim multiple dwelling was the payment of the requisite registration fee to the Loft Board required as a condition of registration. Presumably, that fee has since been paid. Hence, the balance of this controversy should properly be played out before the Loft Board which has the facilities to determine whether there has been a breach of the warranty of habitability by a diminution in services and, if such is found, the expertise to allocate the diminution of rent which ought to flow therefrom. Special Term, by its carefully tailored decision, granted adequate protection to both sides — to plaintiff by the award of rent to February 28, 1983 (which, we were told on argument, is held in escrow), thus affording it the wherewithal to operate the building; and to defendants, by the withholding of the rents which have accrued since March 1, 1983, a period of almost 16 months. If the Loft Board determines that a portion of the rent is properly deductible, the amount withheld from the date as of which partial summary judgment was granted will be adequate to reimburse the tenants for any sums to which they may be entitled. Concur — Murphy, P. J., Sullivan, Bloom, Fein and Milonas, JJ.