OPINION OF THE COURT
Bruce J. Gould, J.
The subject premises of this proceeding is an interim multiple dwelling. Respondent moves to dismiss after petitioner’s *801 prima facie case on the basis of respondent’s failure to comply with the owner obligations in Multiple Dwelling Law § 284.
Multiple Dwelling Law § 285 grants owners of interim multiple dwellings the authority to maintain a nonpayment proceeding, notwithstanding the lack of a certificate of occupancy and multiple dwelling registration. However this dispensation only obtains if the owner is in compliance with article 7-C of the Multiple Dwelling Law, i.e., Multiple Dwelling Law §§ 280 through 287. Multiple Dwelling Law § 284 contains the owner’s obligations. The issue is whether in order to maintain his proceeding an owner must comply with all of Multiple Dwelling Law § 284 or only Multiple Dwelling Law § 284 (2). This court has very recently had occasion to address this issue in the case of County Dollar Corp. v Douglas (Civ Ct, NY County, May 2, 1988, Gould, J., L&T index Nos. 104789-91/87, 104793-6/87). In that case this court held an owner in his petition need only plead compliance with Multiple Dwelling Law § 284 (2), the registration requirement, to defeat a motion to dismiss. The petition need not allege compliance with Multiple Dwelling Law § 284 (1), the legalization requirements. However, at trial petitioner must prove compliance with Multiple Dwelling Law § 284 (1), or face dismissal, for without compliance the dispensation to maintain the nonpayment proceeding granted by Multiple Dwelling Law § 285 is not operable. Therefore the court must look to the testimony adduced at trial to determine whether there has been compliance with Multiple Dwelling Law § 284 (1).
Article 7-C of the Multiple Dwelling Law became effective on June 21, 1982. Multiple Dwelling Law § 284 (1) (i) (A) provides the owner of an interim multiple dwelling shall file an alteration application within nine months of the effective date of the act (i.e., Mar. 21, 1983). In the case before the court the owner filed the alteration application on June 17, 1983, three months past the deadline set by the statute. Multiple Dwelling Law § 284 (1) (i) (B) provides the owner shall take all reasonable and necessary action to obtain an approved alteration permit within 12 months of the effective date of the act (i.e., by June 21, 1983). The clear intent of the section is that an owner obtain the permit by June 21, 1983 or, if not, have exercised all necessary and reasonable action to secure it. Petitioner here has done neither.
Petitioner’s first act toward obtaining the alteration permit was the filing of its first narrative statement with the Loft *802 Board in August 1986.* No satisfactory explanation was given by petitioner for this approximately three-year delay since the filing of the alteration application. This first narrative statement was rejected by the Loft Board in August 1986 as incomplete. Petitioner then waited another 14 months, until October 1987, before submitting a second narrative statement to the Loft Board. This was rejected in December 1987. Petitioner again offers no explanation for the 14-month delay in submitting the second narrative statement.
In sum, there has been a complete and total lack of evidence of reasonable and necessary action by petitioner to obtain the alteration permit. Indeed petitioner has yet to obtain it at all. The late filing of the initial alteration application, the 2-year, 10-month delay in taking any further action, and the 14-month delay between the filings of the narrative statements demonstrate the lack of reasonable and necessary action on behalf of the corporate petitioner.
Not having obtained the alteration permit by June 21, 1983, or having taken all reasonable and necessary action to obtain it, petitioner has not complied with Multiple Dwelling Law § 284 (1). As such petitioner cannot receive the dispensation granted by Multiple Dwelling Law § 285 which excuses the lack of a certificate of occupancy and multiple dwelling registration. Therefore petitioner cannot maintain his proceeding for rent. The harsh consequences befalling an owner who is not in compliance represents the legislative compromise balancing the interests of owners and that of tenants living in units which were not originally created to meet minimum housing maintenance standards. The pre-Loft Law case of Lipkis v Pikus (99 Misc 2d 518, affd 72 AD2d 697) provided for rent to be deposited in court, during the period the owner attempted to obtain a certificate of occupancy. It was a judicial attempt in the absence of legislative guidance to fashion some sort of remedy to the unforeseen situations of having residential tenants occupy commercial space. With the Loft Law (Multiple Dwelling Law art 7-C) the legislative void was filled, and the legal framework established for obtaining the *803 certificate of occupancy and the collection of rent. Petitioner has not complied with these requirements. The court cannot rewrite the provisions of this remedial statute. It is for the Legislature, if it be so moved, to do so.
Accordingly the petition is dismissed with prejudice.

 Although the Loft Board rules including the filing of narrative statements became effective December 1, 1985, prior to December 1, 1985 there was a procedure in effect by which an owner could obtain an alteration permit. Hence any arguments that the delay should be calculated from December 1, 1985 rather than June 1983 is rejected by the court.