*312 OPINION OF THE COURT
Per Curiam.
Final judgments entered September 23, 1991 modified to the extent of granting landlord’s application for reasonable attorney’s fees and by remanding the matter to Civil Court for a hearing on that issue; as modified, judgments affirmed, with $25 costs to landlord cross appellant.
 Landlord seeks possession of two legalized loft apartments for the personal use and occupancy of his married daughter and her immediate family. The apartments, which comprise the entire sixth floor at premises 29 East 19th Street, Manhattan, were formerly subject to the Loft Law and, after issuance of a certificate of occupancy and the execution of residential leases, became subject to the eviction and rent regulation provisions of the Emergency Tenant Protection Act of 1974 and the Rent Stabilization Law (Multiple Dwelling Law § 286 [3]). Civil Court properly found that since neither the Loft Law nor the Rent Stabilization Law limits an owner’s right to gain possession for his or her own use after apartments have been converted from "interim multiple dwelling” status to permanent rent-stabilized status, landlord was entitled to maintain these owner occupancy proceedings pursuant to Rent Stabilization Code (9 NYCRR) § 2524.4 (a) (1) (see, Axelrod v French, 148 Misc 2d 42). Tenants’ argument that the transition from Loft Law coverage to stabilization coverage was not properly effectuated because the Loft Board did not itself set the initial legal stabilized rent (Multiple Dwelling Law § 286 [3]) is not persuasive here. The record shows that the parties, both represented by experienced counsel, negotiated and executed lease riders which set the initial rental, and that the leases were filed for certification with the Loft Board, which voiced no objection to this procedure. Tenants’ belated objection to the process employed in setting the first rent, which they expressly and voluntarily agreed to in writing, is not properly interposed as a defense to holdover proceedings commenced after expiration of their leases. Nor is there any proof that the rents as set by the parties for the period in question were improper or inequitable.
As to the merits of landlord’s owner occupancy claim, a decision after a bench trial may not be disturbed on appeal unless it is clear that the court’s determination could not have been reached under any fair interpretation of the evidence, especially where the court’s findings rest in large measure on *313 the credibility and motivation of the parties (Claridge Gardens v Menotti, 160 AD2d 544). We find no cause to disturb Civil Court’s central finding that "petitioner actually intends to use the sixth floor for his daughter, her husband and their children, and that they undoubtedly wish to live there”. We particularly note that the certificate of occupancy limits residential occupancy to the second and sixth floors only, and that the trial court, after visual inspection of the premises, found that the sixth floor is more desirable for living purposes. Notwithstanding the prior acrimony and litigious history between the parties, the essential inquiry in these proceedings is whether landlord and/or his family has the "honest intention” to use and occupy the apartments sought (Matter of Rosenbluth v Finklestein, 300 NY 402). The trial court’s resolution of that issue comports with the record evidence.
The further argument that landlord fraudulently induced tenants into executing one-year leases without disclosing his intention to seek possession at the end of the term on the ground of owner occupancy is lacking in merit. As indicated, tenants were represented by counsel at the time they executed their leases and elected a one-year term. Apart from the notice requirements for nonrenewal set forth in the Rent Stabilization Code (9 NYCRR 2524.2 [c] [3]), landlord was under no duty to give additional notice.
Turning to landlord’s cross appeal, Civil Court denied attorney’s fees on the rationale that tenants had not violated any lease obligation. However, tenants were required, under paragraph 9 of their leases, to surrender possession upon expiration of the lease terms. Their failure to do so, followed by landlord’s successful prosecution of holdover proceedings, entitles landlord to reimbursement for the legal fees incurred herein pursuant to paragraph 20 (A) (5) of the respective leases (Cier Indus. Co. v Hessen, 136 AD2d 145; S & J Realty Corp. v Korybut, 147 Misc 2d 259, 262-263). Accordingly, a hearing is directed to ascertain the reasonable value of the legal services rendered (Kumble v Windsor Plaza Co., 128 AD2d 425).
Finally, with reference to tenants’ counterclaims for the fair market value of their fixtures and improvements, we affirm the trial court’s referral of that issue to the Loft Board. Under article 7-C of the Multiple Dwelling Law, the Loft Board is authorized to determine "controversies arising over the fair market value of a residential tenant’s fixtures” (Multiple Dwelling Law § 282) and to establish rules and regulations *314 regarding the sale of such improvements (Multiple Dwelling Law § 286 [6]). While landlord correctly observes that the building premises is itself no longer subject to article 7-C, the statutory delegation of authority to the Loft Board is broad enough to encompass disputes over compensation for improvements made by original loft tenants during the period of Loft Law coverage. Since the Loft Board has the particular expertise to resolve this specialized issue, the court’s reference to the agency was appropriate (Haddad Corp. v Redmond Studio, 102 AD2d 730).
Riccobono, J. P., Parness and McCooe, JJ., concur.