OPINION OF THE COURT
Lucy Billings, J.
This summary holdover proceeding to recover possession of apartment 6L at 1700 York Avenue, New York County, is but another chapter in a continuing battle by the owners of pet ferrets to legalize their pets in New York City and elsewhere. (See, e.g., New York City Friends of Ferrets v City of New York, 876 F Supp 529 [SD NY], affd 71 F3d 405 [2d Cir 1995].) For the uninitiated, ferrets are animals of the weasel family, closely related to polecats, about 14 to 16 inches long, with short legs, white and yellow hair, and a hairy tail about 5 to 6 inches long. (E.g., 9 Collier’s Encyclopedia 670 [1984]; Zeuner, A History of Domesticated Animals 401 [1963].) Pursuant to a notice to cure, annexed to and incorporated in the petition, petitioner landlord seeks to evict respondent tenant because he is in violation of the parties’ lease (1) by keeping an animal prohibited by the New York City Health Code (24 RCNY 161.01), or (2) by keeping a pet without the landlord’s prior written consent. Respondent admits he is keeping pet ferrets in his apartment, but moves to dismiss the petition on several grounds. Based on respondent’s admission, petitioner cross-moves for summary judgment.
Respondent claims, first, that the petition does not establish his violation of any law. Second, he claims that since the superintendent and building staff have known about his pet ferrets for over eight years, (a) the landlord has waived any objection to the pets (Administrative Code of City of NY § 27-2009.1 [b]), and (b) the six-year Statute of Limitations applicable to a proceeding based on a contract has expired. (CPLR 213 [2].) *588 Petitioner admits that its superintendent has known about the pet ferrets, but maintains that the superintendent’s duties do not include reporting tenants’ pets to the landlord. Finally, despite respondent’s appearance in court on the date specified in the notice of petition, he claims the notice of petition is defective because it omits the street address of the court.
As discussed further below, petitioner’s pleadings are not fatally defective on this final ground. Nor do any of respondent’s other grounds require dismissal of the petition in its entirety. The court grants the motion to dismiss the petition insofar as it alleges the harboring of a pet in violation of the lease, because petitioner has admitted knowledge of the pets for over three months by a person who is petitioner’s agent for that purpose as a matter of law. As to petitioner’s motion for summary judgment, the petition, together with respondent’s admission that he is keeping the ferrets, does not establish respondent’s violation of 24 RCNY 161.01 as a matter of law. The petition may be construed to allege facts, however, which if true would establish a violation of 24 RCNY 161.01 (a): that respondent is “keeping] an animal of a species which is wild, ferocious, fierce, dangerous or naturally inclined to do harm.” Both parties are entitled to a trial on that issue. Since respondent admits that he continues to keep the animals in question, the applicable Statute of Limitations, whether six years based on a contract (CPLR 213 [2]), or a shorter period, has not run.
I. RESPONDENT HAS WAIVED ANY DEFECT IN THE FORM OF THE NOTICE OF PETITION
CPLR 403 (a) requires that a notice of petition “specify the time and place of the hearing on the petition.” The notice of petition in this proceeding states that the hearing on the petition “will be held at the Civil Court of the City of New York, County of New York, located at, Housing Part B Rm 526, on Dec 11 1998 at 9:30 o’clock in the forenoon.” Merely stating the name of. the court, the county, and the room does not sufficiently specify the place.
Nevertheless, respondent does not indicate any prejudice due to the notice of petition’s failure to specify the court’s street address. He appeared timely in the court on December 11, 1998, in Housing Part B. This fact alone is enough basis to find that the omission did not prejudice him.
In addition, CPLR 2101 (f) provides that: “A defect in the form of a paper, if a substantial right of a party is not prejudiced, shall be disregarded by the court, and leave to cor *589 rect shall be freely given. The party on whom a paper is served shall be deemed to have waived objection to any defect in form unless, within two days after the receipt thereof, he returns the paper to the party serving it with a statement of particular objections.” The affidavit of service of the notice of petition alleges service on respondent by conspicuous place service on December 4 and mailing on December 5, 1998. Respondent does not contest service and appeared to answer the petition on December 11, 1998.
In the unlikely event that respondent’s time to object to the notice of petition did not run until the latest of these dates, he still does not indicate he ever objected to the notice of petition before serving his motion on January 6, 1999. Therefore, even if he were prejudiced by the defect in the form of the notice of petition, he has waived his objection to the defect. CPLR 2101 (f).
II. PETITIONER HAS WAIVED RESPONDENT’S LEASE VIOLATION FOR HARBORING A PET
Administrative Code of the City of New York § 27-2009.1 (b) provides that when a landlord prohibits tenants from keeping pets in their apartments, the landlord must commence a legal proceeding to enforce the prohibition with regard to a particular pet within three months of when the landlord or its agent became aware of the pet. Otherwise the landlord has waived its right to enforce the prohibition against that pet. (Administrative Code § 27-2009.1 [b]; Starrett City v Jace, 137 Misc 2d 328, 329 [App Term, 2d Dept 1987].)
The managing agent of the premises, Abe Rill, alleges that he was unaware of any ferrets in respondent’s apartment before he saw a newspaper article featuring respondent with his pets on September 24, 1998. Mr. Rill admits, however, that the superintendent of the premises was aware of the pets. Although Mr. Rill does not state when the superintendent became aware of them, petitioner nowhere denies respondent’s allegation that the superintendent as well as the building staff have known about the ferrets for years. Petitioner relies on its position that the superintendent’s duties do not include reporting to the landlord when tenants are harboring pets, and therefore no one “involved in the management” of the building knew about the ferrets more than three months before commencing this proceeding. (Affidavit of Abe J. Rill ¶ 7.)
Knowledge of a pet by the landlord’s employee who works on the premises constitutes knowledge by the landlord’s agent for *590 purposes of triggering a waiver under Administrative Code § 27-2009.1 (b). (Amalgamated Hous. Corp. v Rogers, NYLJ, Aug. 13, 1991, at 21, col 2 [App Term, 1st Dept]; Park Holding Co. v Tzeses, NYLJ, Apr. 13, 1989, at 22, col 6 [App Term, 1st Dept].) Even a building employee such as a porter or handyman, with more limited duties than a superintendent, is an agent who binds the landlord for purposes of waiving a pet prohibition. (Mamaroneck Gardens Realty Partners v Nye, NYLJ, Feb. 7, 1992, at 26, col 1 [App Term, 2d Dept]; Matter of Robinson v City of New York, 152 Misc 2d 1007, 1009 [Sup Ct, NY County 1991].) Although the landlord in Mamaroneck Gardens contested the agency relationship, the decision is not clear whether, as here, the landlord maintained, as a factual matter, that the building employees’ duties specifically excluded reporting violations of the pet prohibition. The landlord’s employees who worked in and around the building were “expected to report any violations * * * to the landlord” (Mamaroneck Gardens Realty Partners v Nye, at 26, col 2), but the court did not fully explain whether it found this expectation as a matter of fact or imposed the expectation as a matter of law.
The question presented here is whether a landlord can limit a building superintendent’s agency so that he is not expected to report violations of the pet prohibition and does not trigger the waiver. The practical operation of Administrative Code § 27-2009.1 (b) dictates otherwise. A landlord’s agents or employees who are likely to become aware that a tenant is harboring a pet are the persons who work in the building. The law contemplates that where a tenant openly harbors a pet, visible to persons working on-site for the landlord, and the landlord fails to object, after a specified period the tenant is permitted to keep the pet. A landlord that maintains contact with the building through its on-site employees may not shield itself from the law by closing off that only channel of communication for obtaining notice of pets.
In Mamaroneck Gardens (supra, at 26, col 2) the court concluded: “For the waiver clause to be given any practical effect, knowledge would have to be imparted to the landlord from those employees who work * * * in and around the building * * * on a regular basis.” This conclusion must be interpreted to mean that a building employee, particulárly a superintendent, the on-site employee with the broadest responsibility, is an agent whose knowledge of a pet binds the landlord as a matter of law, regardless of whether the landlord, as a factual matter, limits the employee’s duties to exclude *591 reporting pets. Administrative Code § 27-2009.1 (b), as matter of law, expects persons who regularly work in the building for the landlord to report violations of a pet prohibition to the landlord. A tenant, like respondent here, is entitled to rely on the expectation that those persons are the landlord’s agents for purposes of notice that a tenant is harboring a pet.
This principle of agency applies unless the agent acquires his knowledge while acting for a purpose adverse to his principal, or otherwise outside the scope of his agency, or under other circumstances plainly indicating the agent would not notify the principal about the information acquired. (Center v Hampton Affiliates, 66 NY2d 782, 784 [1985]; Rosalie Estates v Colonia Ins. Co., 227 AD2d 335 [1st Dept 1996].) If a building employee is acting within the scope of his building duties when he becomes aware of a tenant’s pet, and the obvious circumstances do not indicate that the employee would not relay the information, that knowledge is imputed to the landlord. The landlord is bound by that knowledge although the information is never communicated to the landlord. (Center v Hampton Affiliates, 66 NY2d, at 784; Smalls v Reliable Auto Serv., 205 AD2d 523, 524 [2d Dept 1994].) This principle is based on the legal presumption that an agent will disclose to his principal all the material information the agent acquires relating to his responsibilities. (Center v Hampton Affiliates, 66 NY2d, at 784; Smalls v Reliable Auto Serv., 205 AD2d, at 524.) Information about a lease violation is sufficiently related to a building superintendent’s responsibilities to invoke this presumption, particularly when he learns about the violation while engaged in those responsibilities, and as long as no other attendant circumstances suggest to the tenant that the superintendent would not advise the landlord.
If the employee learns about a tenant’s pet while socializing off duty, for example, or keeps the information from the landlord for a purpose adverse to the landlord or for the tenant’s benefit, then the knowledge is not necessarily imputed to the landlord. The court does not address that situation, as petitioner has made no such allegation here. Nor has petitioner suggested that the duties of its employee in this case were so limited or irregular that a tenant could not reasonably expect this employee to notify the building management about an unauthorized pet. In fact this employee, the superintendent, could reasonably be expected to be part of the management, or at least its eyes and ears, and the owner’s eyes and ears.
Therefore the superintendent’s knowledge that respondent was harboring pet ferrets more than three months before *592 petitioner commenced this proceeding is attributable to petitioner. (Amalgamated Hous. Corp. v Rogers, NYLJ, Aug. 13, 1991, at 21, col 2, supra; Park Holding Co. v Tzeses, NYLJ, Apr. 13, 1989, at 22, col 6, supra; Mamaroneck Gardens Realty Partners v Nye, NYLJ, Feb. 7, 1992, at 26, col 1, supra.) Petitioner has waived the pet prohibition in the parties’ lease, unless one of the exceptions to the statutory waiver applies.
Petitioner does not claim that respondent’s pet ferrets have caused damage to the premises, created a nuisance, or interfered with the safety, health, or welfare of the occupants or neighbors of 1700 York Avenue, so as to negate the waiver. (Administrative Code § 27-2009.1 [d].) As discussed further below, petitioner does claim that harboring the pet ferrets violates the New York City Health Code (24 RCNY 161.01). If this claim is meritorious, it would negate the waiver. (Administrative Code § 27-2009.1 [b].)
III. RESPONDENT HAS NOT VIOLATED 24 RCNY 161.01 AS A MATTER OF LAW
In addition, even if respondent’s harboring of ferrets does not permit petitioner to enforce the lease’s prohibition against pets, if harboring the ferrets is otherwise illegal, then respondent has breached the lease’s prohibition against violating any law that affects the apartment. 24 RCNY 161.01 (a), on which petitioner relies, states: “No person shall keep an animal of a species which is wild, ferocious, fierce, dangerous or naturally inclined to do harm,” other than in such places as a zoo, laboratory, exhibition, or commercial establishment. The New York City Department of Health (DOH) has interpreted this rule as prohibiting the keeping of ferrets. (New York City Friends of Ferrets v City of New York, 876 F Supp 529, 532, 535-536, affd 71 F3d 405, supra.)
While New York City Friends of Ferrets upheld the constitutionality of this interpretation, the decision did not determine that the agency’s interpretation was a valid rule, with the force and effect of law. (New York City Friends of Ferrets v City of New York, 876 F Supp, supra, at 540.) For a New York City agency’s pronouncement to be a rule with the force and effect of law, it must be adopted in accordance with the rule-making requirements under the City Administrative Procedure Act (CAPA). (NY City Charter §§ 1041-1046; Union of City Tenants v Koch, 177 AD2d 328, 330 [1st Dept 1991]; New York City Comm. for Taxi Safety v New York City Taxi & Limousine Commn., 177 Misc 2d 855, 858 [Sup Ct, NY County 1998], affd *593 256 AD2d 136 [1st Dept 1998].) CAPA requires that if the agency’s statement fits the definition of a “rule” under New York City Charter § 1041 (5), then for that statement to be valid and binding, it must have been subjected to CAPA’s procedures for notice, comment, public hearing, and publication. (NY City Charter § 1043.)
The parties do not dispute that DOH’s interpretation of 24 RCNY 161.01 (a) prohibiting ferrets has never been adopted as a rule pursuant to CAPA’s public rule-making procedures, and New York City Friends of Ferrets v City of New York (876 F Supp 529, affd 71 F3d 405, supra) did not determine otherwise. Petitioner, however, seeks to treat this interpretation as a valid and binding law, creating legally enforceable rights and obligations. The question, then, is whether this interpretation, if it is to be accorded that force and effect, is a “rule” under CAPA. (NY City Charter § 1041 [5].)
CAPA defines a “rule” as:
“the whole or part of any statement or communication of general applicability that (i) implements or applies law or policy * * * including an amendment * * * of any such statement or communication.
“a. ‘Rule’ shall include * * * any statement or communication which prescribes (i) standards which, if violated, may result in a sanction or penalty” (NY City Charter § 1041 [5]). The courts have not yet interpreted the term “general applicability” as used in CAPA. The term is used so similarly in State Administrative Procedure Act § 102 (2) (a) (i), however, that interpretations under the State law are persuasive here. A statement “of general applicability” is “a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme.” (Matter of Roman Catholic Diocese v New York State Dept. of Health, 66 NY2d 948, 951 [1985].) The statement need not regulate the general public; if a policy is to be “invariably applied across-the-board” to the segments of the population within its ambit “without regard to individual circumstances or mitigating factors * * * as such [the policy] falls plainly within the definition of a ‘rule.’ ” (Matter of Schwartfigure v Hartnett, 83 NY2d 296, 301 [1994]; see also, Matter of Cordero v Corbisiero, 80 NY2d 771, 772 [1992].)
Petitioner treats DOH’s policy as applying 24 RCNY 161.01 (a) generally to all ferrets in New York City, classifying all ferrets as “a species which is wild, ferocious, fierce, dangerous or naturally inclined to do harm.” If 24 RCNY 161.01 (a) is *594 extended to all ferrets, anyone who keeps a ferret in an apartment is subject to a fine of up to $2,000 per day. (24 RCNY 3.12.) The policy and its consequences apply across the board, without any adjudication of whether ferrets are in fact a species as defined in 24 RCNY 161.01 (a), and regardless of whether any particular breed, form, or variety of the animals is not wild or harmful. Although in formulating the policy DOH may have taken ferrets’ characteristics into account, if the policy, once formulated, applies uniformly to all ferrets, without further account of their characteristics, the policy is a rule of general applicability. (Matter of Schwartfigure v Hartnett, 83 NY2d, supra, at 301.)
The fact that DOH does not call its policy regarding ferrets a rule or an amendment to 24 RCNY 161.01, a rule that was adopted pursuant to CAPA’s procedures, does not make the policy any less a rule under CAPA. When drafting the current version of CAPA the New York City Charter Revision Commission, in its section-by-section analysis of the Charter revisions, explained: “The definition of a rule, with certain defined exceptions, encompasses any statement or communication of any kind of general applicability by an agency or official which implements or applies law or policy * * * regardless of the form, in which the statement or communication was made. The definition is functional and requires compliance with rulemaking whenever pronouncements, intended to have the effects set forth, are made, whether they are called rules, regulations, orders or anything else. This definition, in turn triggers the application of the rulemaking provisions of section 1043.” (2 Report of NY City Charter Rev Commn: Dec. 1986-Nov. 1988, at 85-86 [Apr. 1989] [emphasis added].) An agency may not circumvent CAPA’s rule-making requirements by giving a different label to what is in purpose or effect a rule or amendment to a rule. (See, Edenwald Contr. Co. v City of New York, 86 Misc 2d 711, 721 [Sup Ct, NY County 1974], affd 47 AD2d 610 [1st Dept 1975]; Lane, When Is a Rule a Rule?, 3 City L 1, 3, 5 [Jan./Feb. 1997].)
The Charter Revision Commission concluded that CAPA’s definition of a “rule” is “to be construed broadly to accommodate the act’s basic objectives.” (2 Report of NY City Charter Rev Commn: Dec. 1986-Nov. 1988, at 86.) CAPA’s fundamental objective is to inform and gather input from the public on the development and promulgation of the myriad of City agency rules that affect New Yorkers: to provide accountability and openness. (2 Charter Review, at 10-11 [fall 1988]; NY City *595 Charter Rev Commn Summary & Comments on Initial Proposals [summer 1988]; Lane, When Is a Rule a Rule?, 3 City L, at 3.) The rule-making requirements reflect “a legislative desire to give the citizenry a voice in the operation of government.” (Association of Messenger Servs. v City of New York, 136 Misc 2d 869, 875 [Sup Ct, NY County 1987].) That objective is thwarted if the public is denied input before DOH formulates a policy that bans pet ferrets, and if the agency does not publish that policy as part of its regulations.
Given New York City Charter § 1041 (5)’s textual command, as well as the framers’ intent that CAPA’s provisions be used generously, DOH’s ban on pet ferrets may not be treated as law until it is adopted pursuant to New York City Charter § 1043. Nevertheless, 24 RCNY 161.01 is law and still applies to the facts of each case. That rule’s application to ferrets in this case is not a matter of law, but is a factual issue for trial. The agency’s interpretation of its rule as applicable to all ferrets or at least to respondent’s ferrets in this case may be accorded substantial evidentiary weight, but it is evidence, not law.
The determination whether ferrets are in fact “a species which is wild, ferocious, fierce, dangerous or naturally inclined to do harm” (24 RCNY 161.01 [a]) also was left open in New York City Friends of Ferrets v City of New York (876 F Supp 529, supra). That decision found only that DOH’s interpretation that ferrets were such a species has a rational basis. (Supra, at 534, 540.) While DOH’s evidence supporting that conclusion may be not only reasonable, but persuasive, until that conclusion becomes law respondent is entitled to a trial on what remains an issue of fact.
IV. CONCLUSION
Therefore the court denies petitioner’s motion for summary judgment; grants respondent’s motion to dismiss the petition, with prejudice, only insofar as it claims he is harboring a pet that does not violate 24 RCNY 161.01; and denies the motion to dismiss on all other grounds. The remaining issue for trial is whether the ferrets respondent is keeping in his apartment are animals “of a species which is wild, ferocious, fierce, dangerous or naturally inclined to do harm” in violation of 24 RCNY 161.01 (a). If so, then petitioner may enforce the lease’s pet prohibition against respondent, and respondent also has breached the lease’s prohibition against violating a law that affects the apartment. If not, then petitioner’s pleadings estab *596 lish a waiver of the pet prohibition and fail to allege any other ground for termination of the lease,
Respondent shall answer the petition within 10 days of the date of this decision. He may include in his answer or as counterclaims allegations made in his motion, such as petitioner’s retaliatory motive, that may be properly pleaded as defenses or counterclaims.
The case is transferred back to Part B for resolution or trial. The parties are to appear in that Part April 16, 1999.