OPINION OF THE COURT
Alice Schlesinger, J.
Cynthia Robinson, petitioner, has been a tenant at 10 *1008 Waterside Plaza since 1982. Since that time she has occupied a studio apartment on the nineteenth floor. On January 25, 1990, Ms. Robinson became the owner of a tiny Maltese dog. In October of 1990, because of a complaint from a neighbor about a barking dog, Waterside management took steps to remove the dog.
On October 12, 1990 Neil Walsh, assistant manager of Waterside’s managing agents, sent Ms. Robinson a letter telling her that the possession of the dog was a violation of her lease and had to be removed.
A hearing as to this allegation was scheduled for November 27, 1990. It was adjourned several times on consent of both sides and was finally held before a Hearing Officer employed by the Department of Housing Preservation and Development (HPD) on January 17, 1991.
Ms. Roslyn Gottlieb, the Hearing Officer, was authorized by the Rules and Regulations Governing City-Aided Limited Profit Housing Companies to decide whether HPD should issue or deny a "Certificate of Eviction.” This certificate was requested by Waterside Plaza which is a rental housing company organized under the Private Housing Finance Law of the State of New York.
After hearing testimony, Ms. Gottlieb decided to issue this certificate finding specifically that Ms. Robinson had violated paragraph No. 36 of her lease and also had "failed to sustain her burden of proof that petitioner (Waterside) had knowledge of the animal’s presence on the premises prior to October, 1990.”*
It is this latter conclusion which Ms. Robinson now challenges and which forms the basis of her CPLR article 78 petition.
Both Waterside and HPD oppose the petition and both have moved to dismiss it. They both contend through arguments of their respective counsel that judicial review here is limited solely to the question of whether the administrative determination had a reasonable and rational basis (i.e., that it was not arbitrary and capricious) and that under the factual circumstances brought out at the hearing, it was.
Ms. Robinson’s argument that HPD’s decision should be annulled concerns the alleged misapplication of section 27- *1009 2009.1 of the Administrative Code of the City of New York. It reads as follows:
"a. Legislative declaration * * * Because household pets are kept for reasons of safety and companionship and under the existence of a continuing housing emergency it is necessary to protect pet owners from retaliatory eviction and to safeguard the health, safety and welfare of tenants who [have] pets under the circumstances provided herein, it is hereby found that the enactment of the provisions of this section is necessary to prevent potential hardship and dislocation of tenants within this city.
"b. Where a tenant in a multiple dwelling openly and notoriously for a period of three months or more following taking possession of a unit, harbors or has harbored a household pet or pets, the harboring of which is not prohibited by the multiple dwelling law, the housing maintenance or the health codes of the city of New York or any other applicable law, and the owner or his * * * agent has knowledge of this fact, and such owner fails within this three month period to commence a summary proceeding or action to enforce a lease provision prohibiting the keeping of such household pets, such lease provision shall be deemed waived.”
Specifically, Ms. Robinson points to her unrebutted testimony and that of a neighbor that beginning with February of 1990 and on a number of occasions during the months following, maintenance men from Waterside were regularly in her apartment and took note of her dog, small though she may have been.
The dog, Miss Muffy, weighs only five pounds and is paper trained. Therefore she is not walked outside. In fact, Ms. Robinson stated on those occasions when she takes her dog out, it is in a bag.
Ms. Robinson showed, via a kennel registration and sales slip, that she obtained the dog in late January and stated that Miss Muffy was seen, petted, and commented upon by various employees of Waterside who had come to her apartment to attend to different problems. These included air-conditioner servicing, a toilet overflow, floor buckling, and letting petitioner into her apartment when she had forgotten her key.
She argues that these individuals are agents of the landlord for the purpose of obtaining notice of the presence of a dog. Therefore, since this testimony was neither challenged nor rebutted by any witnesses for Waterside, she urges that she did meet her burden in showing a waiver of the lease clause.
*1010 In support of her argument, counsel cites Amalgamated Hous. Corp. v Rogers (NYLJ, Aug. 13, 1991, at 21, col 2 [App Term, 1st Dept]) and Park Holding Co. v Tzeses (NYLJ, Apr. 13, 1989, at 22, col 6 [App Term, 1st Dept]).
It is to be noted that Ms. Robinson is correct that her testimony was not contested. Neil Walsh, assistant manager for Waterside’s managing agent, was the sole witness called by Waterside. He testified that as far as he knew management first became aware of Miss Muffy’s existence in October of 1990 when a complaint came in. He was the first witness to testify. However, after the tenant’s case was completed, Waterside made no effort to call any of their employees or Walsh back to challenge the account given on respondent’s case, as to their knowledge.
The function of this court is to decide whether the Hearing Officer's decision was made in accordance with the Administrative Code. In other words, as respondents’ counsel correctly points out, it is not relevant whether the court agrees with the decision but only whether the decision was rationally made in accordance with law. I find that it was not.
I make this finding because the Hearing Officer used an improperly narrow standard to judge whether the lease clause prohibition against animals was waived.
The rationale for Ms. Gottlieb’s decision on this point is to be found on page 5. After a recitation of the "Pet Law”, section 27-2009.1 of the Administrative Code, the Hearing Officer gave her conclusions.
She found that Ms. Robinson had failed to prove her defense of "open and notorious” because "Ms [sic] Muffy was not taken outdoors for daily walks, and by respondent’s own acknowledgement she was accommodated more like a cat than a dog”. However, this creates an improperly restrictive and narrow criteria for proving "open and notorious”. It would lead to a conclusion that all small dogs or other animals whose masters elected to treat only as house pets could not have the benefit of the law’s waiver even though they had been seen and noted by management personnel.
The Pet Law explicitly acknowledges that household pets are "kept for reasons of safety and companionship” and that it is necessary to "safeguard the health, safety and welfare of tenants who harbor pets”. (Administrative Code § 27-2009.1 [a].)
The law does not state that an animal is harbored openly *1011 and notoriously only when it is displayed by taking the animal outside or allowing it to roam through the building.
In reaching this decision, I am not unmindful of Ms. Gottlieb’s characterization of respondent’s (Ms. Robinson) testimony as "undocumented and ultimately unpersuasive”. This appears, at first blush, to be a finding of credibility or lack thereof by the Hearing Officer. Such findings are normally not reviewable in an article 78 proceeding.
However, despite this language, which is, of course purely conclusory, a thorough examination of the entire paragraph shows that Ms. Gottlieb never made such a finding but rather, as mentioned above, simply applied the rationale that Miss Muffy as a house animal, was not displayed openly and notoriously.
Such a reading is arbitrary and capricious also because it would seem to work most harshly against tenants who are housebound for one reason or another, such as age or disability, and who choose to have small dogs (or cats) as a companion without the need to walk them.
Therefore, since I find that the Hearing Officer failed to use the correct standard in evaluating the "open and notorious” factor and failed to even reach the "knowledge of the owner/ agent” factor, which was unchallenged, this court has no choice but to vacate the March 11th decision.
Respondents’ motions to dismiss the petition are denied. Petitioner’s motion is granted to the extent of annulling the order and determination of HPD and remanding this matter to HPD for a new hearing consistent with this decision.

 The Hearing Officer specifically did not consider or decide as relevant that the dog was a nuisance.