McKeon, P.J. (concurring).
For those of us who have been privileged to have a career in the law, there is the occasional frustration when it seems that a manifest injustice has been done to one utterly undeserving of such a fate. This is such a case. While I join in the reasoning of the court’s memorandum decision, I feel compelled to write separately to underscore my concerns with the procedural and substantive errors made below, errors which, if unremedied, would lead to the needless and unwarranted eviction of an elderly tenant.
The guilty pleas recently entered into by Michael Vick and his cohorts for their barbarous acts serve as a grim reminder that a humane nation considers cruelty to animals so abhorrent that it criminalizes such conduct. The silver lining in that sordid affair has been the expression by many Americans that the inherent decency of a people must embrace the kindly treatment of pets.
And so one need not be a pet lover to appreciate that for many there is a special love that attaches to owning a pet, that companion and source of joy who can separate the sad and solitary from a world of loneliness and despair, serve as a playmate for a son or daughter, or just be a devoted friend whose loyalty remains steadfast in good times and bad. Indeed, so strong can be the bond between owner and pet that society recognizes the need for laws to protect each from the unscrupulous who would prey on one’s love for an animal to achieve their own selfish ends.
New York City recognized the need for such legislation when “[i]n 1983, the New York City Council, responding to widespread abuses by landlords . . . enacted an ordinance ... to allow [the] tenant the security and companionship of a pet when a landlord was not timely enforcing the no-pet lease covenant” *51 (Seward Park Hous. Corp. v Cohen, 287 AD2d 157, 161 [2001]).' This ordinance became known as the “Pet Law.” Its purpose was to prevent landlords from using pet ownership as a subterfuge to conceal an otherwise retaliatory eviction or effort to regain possession of an apartment from a tenant, who, because of longevity of tenancy, enjoyed the benefit of a regulated below market rent.
It is against this backdrop that tenant Siiri Marvits, a resident of 184 West 10th Street, New York, New York, since 1962, stands on the verge of eviction from her rent-controlled apartment of 43 years. Over the last decade she has provided a home to two cats, Athena and Apollo. All agree (landlord, trial court and dissent) that the cats are quiet animals, described in the record as meek and shy. There is no claim that they pose a nuisance to Ms. Marvits’ neighbors. Nonetheless, when Ms. Marvits refused to part with her pets, landlord commenced this holdover proceeding, asserting that the presence of the cats in the apartment violated the no pet rider of her lease.
Initially, the trial court dismissed the petition, holding that petitioner “waived its right to bring this summary holdover proceeding based on the Pet Law.” However, almost a year later, in response to landlord’s belated motion to reargue, the court below reversed itself (“commendably” so, says the dissent), citing Gidina Partners LLC v Marco (11 Misc 3d 21 [2005]), a decision from this court, as the justification for its action.
In Gidina Partners, a tenant brought a 19-pound dog into his apartment in October 2002. For a five-day period, November 4 to November 8, 2002, the dog was walked at an unspecified time or times once a day in front of the brownstone premises there involved. Shortly thereafter, tenant boarded the dog outside the premises. This court ruled that tenant failed to establish that the commencement of the holdover proceeding was untimely. These facts, I regret to say, were mischaracterized by the court below, in its revised decision, as follows: “If regularly walking a nineteen-pound dog does not act as a waiver of the ‘Pet Law,’ keeping cats in an apartment since 1997 without any public display cannot possibly constitute open and notorious conduct.” The sporadic dog walking vaguely described in Gidina Partners can hardly be deemed to be a “regular[ ]” activity or have any meaningful legal relevance to the factual scenario of a tenant who harbored cats for almost a decade. Try as they might, the court below and the dissent cannot spin Gidina Partners as creating a new standard for small animals or use it to justify a *52 grant of reargument or subsequent possessory judgment in favor of landlord in this proceeding. Simply said, Gidina Partners involved a tenant who did not satisfy the three-month rule in the Pet Law and has as much to do with the facts of this appeal as apples do to oranges.
And so the legal posture of the court below and dissent is, in a nutshell, that the landlord has not waived its right to assert the no pets clause in Ms. Marvits’ lease. As their argument goes, the Pet Law offers Ms. Marvits no relief because she failed to establish, at the trial of this holdover proceeding, that the cats were displayed “openly and notoriously” or that landlords, past or present, had knowledge that she was harboring cats. Thus, they place their judicial seal of approval on the cruel Hobson’s choice offered to Ms. Marvits by her landlord: leave or give up the cats — as if there is any doubt as to what her choice will be. In doing so, each transforms the “Pet Law” into a worthless piece of paper, placing countless New Yorkers who own “house pets,” from parakeets to cats, at the mercy of their landlords.
Apparently eager to alert the reader that, in the dissent’s view, Ms. Marvits’ unfortunate lot has been caused by her own words, the dissent opens: “I respectfully dissent and accept the tenant’s testimony in its entirety.” However, a review of the salient points of that testimony, rather than supporting the view of the trial court or the dissent, clearly establishes that the landlord knew, or should have known, about the presence of the cats in the apartment thereby foreclosing Ms. Marvits’ eviction by reason of the Pet Law. Ms. Marvits credibly testified as follows:
1. She has lived in the apartment since August 1, 1962;
2. She has two cats named Athena and Apollo who have lived with her since 1997. Athena has kidney disease;
3. The cats are fed in the kitchen and their bowls are kept on top of the refrigerator. The litter box is kept in the bathroom;
4. In 2000, the then managing agent Maureen Schlatter, the superintendent Bill Dempsey, and a contractor were in the apartment to inspect the bathroom’s ceiling which had fallen. Repairs commenced about a week later. One wall in the bathroom was also tiled;
5. On October 16 and 17, 2003, Dennis Tsomas of All Town Construction replaced circuit breakers in the apartment;
6. Later in October 2003, Mr. Tsomas repaired a broken pipe underneath the kitchen sink;
*53 7. In November 2004, the present superintendent Mr. Garcia was in the apartment; and
8. Ms. Marvits had cats in the apartment prior to Athena and Apollo.
Try as the dissent might to minimize the work done in tenant’s apartment, the fallen ceiling, the retiling of a bathroom wall, the replacement of circuit breakers and the repair of a broken pipe were significant tasks which required many hours of repair over several days. Twice, the dissent references tenant’s inability to say whether any of the workers saw the cats when they were in the apartment. This is troubling since I am unaware of an evidentiary basis — where there has been no verbal expression — that permits one to testify as to what another has seen or not seen.
The dissent cites as an “issue” of disagreement with the majority “characterizing Tsomas as an agent of the landlord.” On this, the dissent stands alone. Neither the landlord, in its brief, nor the court below, in either of its opinions, joins .in this argument. The dissent also uses the phrase “long term” to impose a “duration test” before an independent contractor can be considered an agent. Most respectfully, there is no temporal litmus test in New York before one becomes an agent for another. Most managing agents for landlords are independent contractors who become a building’s agent at the moment of their retention. There is no waiting period. Significantly, as the dissent admits, Tsomas’ business, All Town Construction, was the exclusive entity hired to make routine repairs at the building. The notice sent by the landlord to all tenants, tenant’s exhibit C in evidence, instructs tenants to directly communicate with All Town for the scheduling of repairs. This is important because by allowing tenants to communicate directly with All Town, the landlord ostensibly established All Town as its agent for purposes of making repairs in the building. Indeed, it is well settled that agency may be applied from a party’s words and conduct viewed in light of the surrounding circumstances (see Hallock v State of New York, 64 NY2d 224 [1984]; Morales v Cozy Brokerage, 170 AD2d 201 [1991]; Federal Ins. Co. v Diamond Kamvakis & Co., 144 AD2d 42 [1989]). Moreover, if landlord had been truly interested in identifying tenants who harbored pets, it could have directed All Town and Tsomas to report such information. There is no evidence that it did so. In any event, by designating All Town as its exclusive repairer, landlord was bound by the observations of All Town personnel, whether reported or not.
*54 Next, the dissent contends that the burden of proof on waiver never shifts from tenant to landlord. Sure it does. Under the Pet Law, a tenant need not establish that a landlord had actual knowledge of the presence of the pet (Seward Park Hous., 287 AD2d at 164). Where, as here, neighbors knew about the cats and employees and agents of landlord were present in the apartment when the cats were there, not only did the burden of proof shift to landlord to explain its claimed ignorance, tenant was likely entitled to the benefit of an adverse inference by landlord’s failure to call Tsomas, or his workers, to describe what was seen in tenant’s apartment on those occasions when they were there (id. at 168).
Indeed, the court in Matter of Robinson v City of New York (152 Misc 2d 1007, 1010 [1991]), a case characterized as “factually distinguishable” by the dissent, said as much when it cited, as a basis for its opinion, that “after the tenant’s case was completed,” landlord “made no effort to call any of their employees” to describe their observations in tenant’s apartment.
Significantly, the dissent mistakenly confuses the nature and quantum of proof necessary to establish an “open and notorious” harboring of a pet as contrasted with an owner’s knowledge of that fact. They are completely different tests. In the former, as the dissent concedes, tenant did offer testimony by a neighbor that he knew about tenant’s cats. Indeed, the neighbor fed them. The fact that the presence of the cats was generally known in the building is sufficient to establish notoriety and gives rise to a “presumption” that the owner knew of their presence (Seward Park Hous., 287 AD2d at 164). So, too, the fact that the cats lived with Ms. Marvits for years should be a factor giving rise to a presumption of knowledge by the owner. Parenthetically, if, as the owner contends, it was concerned about the presence of pets in the building, it had years, in the case of Ms. Marvits, to perform routine inspections which would have readily discovered the presence of Athena and Apollo in the apartment. “[T]he three-month Statute of Limitations requires routine awareness on the part of the landlord. The ordinance leaves to the landlord’s common sense what needs to be done for the landlord to become apprised of such a situation” (id. at 165).
Presumably, landlord knew that which the court in Robinson recognized when it observed, regarding house pets such as cats, that “the law does not state that an animal is harbored openly and notoriously only when it is displayed by taking the animal *55 outside or allowing to roam through the building” (Robinson, 152 Misc 2d at 1010-1011). And so, to make matters worse, the court below, in its revised opinion, fashioned a new test: “owners of smaller dogs and other smaller animals such as cats now must be more open and notorious than owner’s of larger animals” — whatever that may mean.
Perhaps the holding of an “open house” where a cat owner introduces the pet to building staff and neighbors will satisfy the new test formulated by the trial court. The reality is that it is all but impossible for a cat owner to comply with the standards sought to be imposed by the court below and the dissent, unless, of course, the litter box becomes a thing of the past and countless feline owners are forced to go the way of their canine friends, to be seen, leash in hand, walking their cats, as the lyrics of the song go, “on the sidewalks of New York.” While that might remedy some of the dissent’s concerns about the Pet Law, the fact is a dog will always be a dog, a cat will always be a cat, but Athena and Apollo will never be Rover or Spot.
And so it comes down to this: some years ago, a kind hearted tenant, now in the twilight of her years, adopted two cats in need of a home. The animals were no bother to anyone. Many years have come and gone, until a landlord stood in a courtroom and proclaimed that his only design was to separate two old cats from his building. Of course, one more cynical than I might conclude that this proceeding’s aim is not so much to separate Ms. Marvits from her pets as it is to separate her from her rent-controlled apartment of more than four decades. All of us should learn from our mistakes, courts included. Thus, there ought not be a repeat of the words of the Appellate Division: “[T]he Appellate Term rendered the [Pet Law] ‘toothless’ ” (Seward Park Hous., 287 AD2d at 163). Ms. Marvits deserves better than that, as do all New Yorkers who have opened their homes and hearts to a pet.
The order under review should be reversed, the petition dismissed and final judgment in favor of tenant reinstated.